SOUTHERN REALTY COMPANY, APPELLEE, v. DANIEL HANNON, APPELLANT.

FILED SEPTEMBER 25, 1911. No. 16,515.

1. **Contracts: CONSIDERATION.** A consideration does not necessarily consist of a direct advantage to the promisor, but may consist of a direct disadvantage to the promisee.

2. ———: **CONSTRUCTION.** Evidence examined, and *held* that section 341 of the code should be applied.

APPEAL from the district court for Douglas county: ALEXANDER C. TROUP, JUDGE. *Affirmed.*

*Murdock & Pancoast,* for appellant.

*J. D. Ringer, contra.*

LETTON, J.

This action was brought to compel the defendant to

remove certain iron shutters or hoardings which he had placed over six windows in a party wall built upon the line between the respective properties of the plaintiff and defendant, and to restrain him from maintaining the same.

The facts are that in the fall of 1906 the plaintiff began the erection of a brick building on a certain lot in the city of South Omaha adjoining the lot belonging to defendant. Previous to this time plaintiff's grantor and the defendant had entered into a written party-wall agreement afterwards assigned to plaintiff, by the terms of which the wall was to be constructed, one-half upon the property of each, and when the wall was used by the defendant he should pay to the other party one-half of its actual cost. Plaintiff began the erection of the building, and after the foundation was built the defendant began the construction on his lot of a building which was longer than the plaintiff's building. He used the party wall to a distance of about 39 feet from the front, then left an air space or light well three feet in width the entire length of the plaintiff's building, and beyond this built a wall, one-half on each lot extending to the alleyway. There was no agreement as to the construction of the latter wall as a party wall. In building the party wall the plaintiff left six windows above the first story opening into the air well or light shaft before referred to. The buildings were completed about the 1st of May, 1907. Mr. Hall, the president of the plaintiff corporation, testifies that no objections were made by Mr. Hannon, the defendant, to leaving these window openings in the party wall, although he was around the buildings constantly during their erection. After the completion of the building Mr. Hall presented a bill to defendant for the cost of his one-half of the party wall. The defendant refused payment, for the reason that the party wall was not a solid wall on account of the window openings having been left in it. The plaintiff then procured brick and mortar and employed men to close the

window openings. They had begun this work when one McAuley, who was occupying rooms whose windows would be closed if this were done, requested the defendant to allow the windows to remain open. After some parley between Hannon and McAuley this request was granted, if McAuley would stain the windows. So far the facts are undisputed.

Plaintiff testifies that at this time he was informed by McAuley of this conversation; that he then called Mr. Hannon by telephone, and told him that he had men employed and material on hand to close the windows, but that if Hannon would consent to them remaining open he would discharge the men and pay their charges; that Hannon then told him that he might leave the windows open, and that, relying upon this agreement, plaintiff paid the men for the hauling, for the mortar wasted, and for their time, which amounted in all to $9. On the other hand, the defendant denies ever holding any conversation over the telephone or otherwise in which Hall informed him of his intention to close the windows and of his having men and materials on hand ready to ·do so, and denies giving him permission to let the window openings remain. He further testifies that before the buildings were erected he tried to make an agreement with Hall that each should leave a space for light and air, but that Hall refused, saying he could get all the light he needed from skylights. He admits, however, that he knew the · openings were being made after the erection was begun, but says that he never consented to the windows being placed in the wall.

Afterwards plaintiff began suit in county court against defendant to recover· $625.62 as the cost of his share of the party wall. Pending the action, negotiations were had between the parties and their attorneys as to the settlement of their differences. The points in dispute seemed to be the erection of the extension wall by defendant upon the lot line without agreement, also a claim by defendant for the building of an additional 18 inches in

height upon the party wall to correspond with the remaining walls of his building, and the matter of the window openings in the party wall. A settlement was reached, and in accordance therewith, on the 13th of September, a new party wall agreement was entered into covering the wall constructed by plaintiff under the original party-wall agreement and also the new and additional wall constructed by the defendant. At the same time the action in the county court was settled by written stipulation. This recited that the defendant had paid the plaintiff $593.27, with $2.85 costs, in full settlement for one-half the party wall in controversy, in accordance with the first party-wall agreement; that the plaintiff had paid defendant by credit on the claim $19 for one-half of the fire wall built by defendant above the party wall constructed by plaintiff. The stipulation also contained the following provision: "And further agreed that the plaintiff has allowed as a credit on the claim in the above entitled cause, on account of the windows in the portion of the party wall in controversy, the sum of thirteen and 35-100 dollars ($13.35) and that this cause is fully settled."

The rights of the parties in this case depend to some. extent upon the construction to be given this clause in the stipulation. If it is intended to mean, as the plaintiff insists, that all matters in dispute between them, including the right to retain the window openings in the wall, were adjusted and settled, then the plaintiff must prevail. On the other hand, if, as defendant contends, the only purpose and meaning of this clause was to evidence the fact that the plaintiff had allowed him as a credit at that time one-half the estimated cost of filling the openings, and it was understood that he would not be compelled to pay the same until the windows were filled with brickwork, it would be a strong circumstance tending to show that the defendant had no intention to abandon his contention that the party wall should be a solid one.

Some months after the making of this stipulation and the dismissal of the suit, a sharp dispute arose with respect to the disposition of rain-water falling upon the roof of defendant's building. McAuley afterwards moved out of the rooms, and then defendant closed the windows by nailing sheets of iron over the openings. To remove these obstructions and compel defendant to leave the windows open is the purpose of the suit. Defendant answered, and prayed affirmatively that plaintiff be required to make the wall solid and close the openings. The district court found upon the facts for the plaintiff and granted the relief prayed. The court found substantially that, as a consideration for allowing the windows to remain, the material was hauled away and the expenses incurred were paid by the plaintiff, and that in the settlement entered into it was agreed that the windows should remain open for light and air.

Defendant contends that there was no consideration for the first agreement (even if made, which he denies), and that he understands the law to be that there must be some advantage moving from Hall to Hannon or some valuable thing passing to him as a consideration for permitting these openings to remain. It may be said, however, that a consideration does not necessarily consist of a direct advantage to the promisor, but may consist of a direct disadvantage to the promisee. If Hall, with Hannon's knowledge and consent, paid to a third party money which he would not have paid except on account of Hannon's agreement to forego his right to have the windows closed, this was as much a consideration as if he had paid the money to Hannon himself. *Faulkner v. Gilbert,* 57 Neb. 544. The evidence on this point is directly conflicting, but it seems reasonable that Hall would not have discharged the men and paid the money unless some agreement had been made with Hannon whereby he was induced to change his purpose, which was so far executed that work had been begun to remove the woodwork in the openings.

We are further of opinion that all matters in dispute were intended to be settled at the time the stipulation was entered into and the new party wall agreement made. At least, this was the view taken by the plaintiff's attorney, Mr. Baird, and by plaintiff himself. While defendant and his witnesses say the matter settled as to the windows was only the cost of filling them, plaintiff's witnesses say it was the intention to settle the whole controversy. Plaintiff testifies he paid the same amount for the openings to the contractor as if the wall had been solid, and that in the settlement he allowed the defendant the credit named therein as a consideration for, and to settle the dispute as to, his right to keep them open. The code, section 341, provides: "When the terms of an agreement have been intended in a different sense by the parties to it, that sense is to prevail against either party in which he had reason to suppose the other understood it." We think defendant had reason to believe from all the circumstances that the language of the stipulation was understood by plaintiff to settle the whole matter as to his right to keep the windows open, and under the code provision the sense in which plaintiff understood it must prevail. At the beginning of this controversy defendant no doubt had the better right, but by his assent to the payment and discharge of the workmen and by his subsequent settlement he waived his right to insist that the windows be closed.

The judgment of the district court appears to us to be justified by the law and the evidence, and it is

AFFIRMED.