Craft Engineering Company, Inc., Appellant, *v.* Messa, Appellant.

Argued March 27, 1952. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*Abraham Wernick*, with him *Wisler, Pearlstine, Talone & Gerber* and *Raymond Pearlstine,* for plaintiff.

*David V. Shapiro*, with him *Shapiro, Rosenfeld & Stalberg, John E. Flynn* and *High, Schwartz, Flynn & Roberts,* for defendants.

OPINION BY ROSS, J., July 17, 1952:

This is an action of assumpsit brought by the Craft Engineering Company, Inc., a Pennsylvania corporation, against Matthew A. Messa and his wife, Dorothy P. Messa, to recover on a promissory note. Defendants' answer set up two counterclaims: one for a bonus allegedly due the defendant Matthew Messa as compensation for services rendered by him for plaintiff; and the second for a balance claimed to be due the defendant Dorothy Messa under a contract for the purchase by plaintiff of ten shares of its capital stock owned by her.

The case was tried in the Court of Common Pleas of Montgomery County before KNIGHT, P. J., sitting without a jury. After the court found for the plaintiff in the sum of $2,240.49 and entered judgment thereon, both parties appealed to this Court.

It is necessary to note in detail the manner in which the court below arrived at $2,240.49 as the sum due plaintiff. From $6,521.76, the face of the note in suit, the court deducted the following: (1) $3,276.60, representing the difference between the total purchase price of defendant Dorothy Messa's ten shares of stock at $927.66 a share and the sum of $6,000 paid by plain-

tiff to her on account; and (2) $21.05. representing a deduction of one-fifth of depreciation in the amount of $105.23 used in fixing the value of the stock at $927.66 a share, the stock purchase agreement having provided that there should be no allowance for depreciation in computing the value of said stock. To the remainder of $3,224.11, the court added interest thereon at six per cent. from June 10, 1946 to July 21, 1950 in the sum of $799.11, thus reaching a total of $4,023.22. Finally, from this total the court deducted $1,782.93, representing a bonus found due to defendant Matthew Messa from plaintiff with interest thereon from December 31, 1945 to July 21, 1950, to arrive at $2,240.29, the amount of the judgment.

Neither party is satisfied with the conclusion reached by the court below. The plaintiff contends that the defendant Matthew Messa was not entitled to a bonus and, accordingly, that the court erred in reducing the amount of its recovery by any amount on account of such bonus. Defendants, on the other hand, contend that the court erred in accepting a valuation of $927.66 a share placed on plaintiff's stock by its accountant, and that it was error to award interest to plaintiff for any period after August 1947, the date of an alleged tender.

The following facts are necessary background: The plaintiff corporation was engaged in the manufacture of airplane parts during World War II. Matthew A. Messa was an officer and director of the corporation, and was for a time manager of its Lansdale plant. Ten of the fifty shares of capital stock in the corporation had been issued to Mr. Messa and had been assigned by him to his wife, the defendant Dorothy Messa.

On December 12, 1944, plaintiff made application to the Stabilization Unit of the Bureau of Internal Revenue for permission to pay Matthew A. Messa a

salary of $15,000 a year and a bonus not exceeding $5,000 a year, to be paid so long as the production of the corporation averaged $75,000 a month. On January 13, 1945, the Stablization Unit approved a salary of $10,000 a year for Mr. Messa effective December 12, 1944, and a bonus of $3,500 for the year 1944. Thereafter, it was agreed that Messa's salary as general manager should be $10,000 for the year 1945. The court below found that plaintiff had made the further agreement to pay Messa a bonus of $3,500 if production averaged $75,000 a month during the year 1945. This finding was and is challenged by plaintiff.

On August 10, 1945, plaintiff issued its check to the defendant Matthew Messa in the sum of $1,660.20. The court found as a fact that this check represented one-half of the $3,500 bonus for 1945, less certain withholding tax deductions. On August 23, 1945, pursuant to a resolution of plaintiff's board of directors, Messa voluntarily submitted to a salary reduction from $10,-000 to $7,500 a year. The court found: "Nothing was said about the bonus." And the court concluded: "There is due from the plaintiff Company to the defendant, Matthew A. Messa, for the period from July 1, 1945 to December 31, 1945, a bonus of $1,750, less any withholding charges and other deductions required by law." [The bonus was ultimately reduced by the court by 20 per cent. or $350 to compensate for the fact that the bonus was not considered as a liability in computing the share value of Mrs. Messa's stock.]

On December 20, 1945, plaintiff accepted defendants' offer of $12,521.76 for the machinery and equipment at its Lansdale plant. $6,000 was paid on account and the defendants, on January 10, 1946, gave their promissory note payable five months after date for the balance of $6,521.76.

On December 21, 1945, pursuant to a resolution of the board of directors, plaintiff and defendant Dorothy

Messa entered into an agreement whereby the corporation agreed to purchase her 10 shares of stock. The selling price was stated to be $1,587 a share based upon book value as of October 31, 1945. This price was, however, subject to revision upward or downward to reflect changes in net worth occurring in November and December of 1945. The agreement also provided for revision in the selling price on account of income tax. Dorothy Messa received $6,000 on account of the purchase of her stock. On January 9, 1945, plaintiff's accountant submitted an analysis of changes in the net worth of the corporation from November 1, 1945 to December 31, 1945, and computed the share value to be $927.66. Certain contested items in this analysis will be discussed below in connection with defendants' argument.

The plaintiff contends that the evidence does not support the finding of the court below that the corporation agreed to pay the defendant Matthew Messa a bonus for the year 1945 if production averaged $75,-000 a month during that year. With that contention we cannot agree. Mr. Messa testified that he received a letter concerning the bonus from A. L. Shapiro, counsel and secretary-treasurer of plaintiff. This letter, which was admitted in evidence, was dated January 17, 1945 and was captioned "RE: Salary and Bonus". With respect to the bonus for 1945 the letter states: "Your salary, of course, for the year 1945 will be at the rate of $10,000 per year. I assume that, at the end of the year, a bonus will be paid, *in accordance with our understanding,* unless, in the meantime, some new Treasury regulation is adopted." (Italics supplied.) Messa testified further that he had discussed his salary and bonus for 1945 with Shapiro and with Mr. Clarke, president of the corporation, and that "the salary was to remain the same of 1945, and the bonus was to be

all right provided our production stood at $75,000 a month, the average." He stated that Clarke gave him permission to draw against his bonus and "in August I received about $1,750 from the figures I heard today, which was half of the bonus for 1945". Plaintiff's accountant testified that he drew a check to Mr. Messa on August 10, 1945 in the sum of $1,560.20. He stated that the check was in payment of a "salary item" and that it represented a total debit of $1,750 less a deduction of $189.80. The production of the plaintiff corporation exceeded an average of $75,000 a month during the year 1945. Against this evidence was the testimony of Mr. Shapiro and Mr. Clarke, who denied that Mr. Messa discussed the 1945 bonus with them.

A question of fact was thus presented to the court below and by it resolved in defendant's favor. The findings of fact of a trial judge sitting without a jury have the same binding effect as facts found by a jury and, if based on sufficient evidence, cannot be disturbed by an appellate court. *Cowell v. Builders, Incorporated,* 139 Pa. Superior Ct. 192, 194, 11 A. 2d 504. We are agreed that there was here sufficient evidence to support the finding.

Plaintiff's next contention is that the contract to pay Mr. Messa a bonus for 1945, even if made, was illegal. This contention was not raised in the court below. "An appellate court does not sit to review questions that were neither raised, tried nor considered in the court below." *Fisher v. Brick,* 358 Pa. 260, 264, 56 A. 2d 213. See also *Mullooly v. Short,* 365 Pa. 141, 74 A. 2d 136, and *Schmidt v. Martz,* 161 Pa. Superior Ct. 439, 55 A. 2d 588.

Finally, plaintiff contends that the defendant Matthew Messa, by failing to claim the bonus for the last six months of 1945 until October 1947, waived his right to the bonus. The court below answered this conten-

tion as follows: "It is true that Mr. Messa did not make a claim for a bonus for the last half of the year 1945, until October, 1947, but it is likewise true, that the value of Mrs. Messa's stock had not been determined in October, 1947, and hence a dispute existed as to the amount due by the defendants on their note. Under these circumstances, we do not feel that the delay of Mr. Messa in making his demand for the bonus, can be considered as a waiver of his right to receive it." The cases cited by plaintiff in support of its contention are distinguishable. *Fried v. Fisher*, 328 Pa. 497, 196 A. 39, cited by the plaintiff as stating the general rule applicable here, is a case in which the result was controlled by the doctrine of promissory estoppel. The doctrine is formulated in section 90 of the Restatement of the Law of Contracts as follows: "A *promise* which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by the enforcement of the *promise.*" (Italics supplied.) In the case at bar there is, of course, no promise by the defendant to enforce. *Cowell v. Builders, Incorporated,* supra, 139 Pa. Superior Ct. 192, 11 A. 2d 504, cited by plaintiff, was an action of assumpsit brought to recover a balance claimed to be due for wages. The trial judge sitting without a jury found for defendant. The court found that plaintiff failed to establish an express contract for the higher wage. This Court held that the oral and written evidence supported the conclusion of the trial judge by a "strong preponderance" and went on to state at page 194: "In addition, the legal plaintiff during the entire course of his employment, extending over eight months, regularly receipted in writing for each week's pay at the rate claimed by defendant to have been agreed upon.

The latter fact *under ordinary circumstances* 'is to be deemed an estoppel against the assertion of any claim for additional compensation at this time'." (Italics supplied.) The circumstances in the case at bar are far from "ordinary". At all times when plaintiff contends Mr. Messa should have demanded payment of his bonus, there existed a balance in plaintiff's favor with respect to the various deals between it and the defendants.

The defendants contend that the court below erred in its construction of the stock purchase contract. Specifically, it is argued that the court did not properly construe those provisions dealing with the effect of Plaintiff's income tax liability on the book value of its shares. The court made the following finding: "The fiscal year of the Corporation closed on May 31st. As of December 31, 1945, the Income Tax due by the Corporation was $24,480.57, and this was the amount used by the accountant in figuring the net worth of the Company as of December 31, 1945. The actual amount of Income Tax paid by the corporation for the year 1945 [1945-46], was $16,834.33. The difference, $7,646.34, was the result of losses suffered by the plaintiff Corporation between January 1, 1946 and May 31, 1946." The court, having before it the contract between plaintiff and Dorothy Messa, held that the sum of $24,480.57 was the proper figure to be used in calculating net worth and share value. We must disagree with the court on this point.

The stock purchase contract, after setting forth various provisions, the effect of which is to fix the purchase price at book value as of December 31, 1945, reads "(3) The parties recognize that the adjustments hereinbefore referred to will require further adjustment in the amount of tax liability shown on the statement and that the continued operation of the company will re-

quire an equitable apportionment of the tax liability between them so as to equitably reflect the value of their stock as of the date of this agreement and they have, therefore, agreed on the following formula as the basis for determining the amount of tax liability which is to be substituted for the reserve shown on the statement, to wit: the entire income tax for the fiscal year ending May 31, 1946, less the tax on the income from manufacture and sale of its products for the period beginning January 1, 1946 and ending May 31, 1946, computed at rates in effect for the year 1946. (4) No increase or decrease in book value of the stock caused by the manufacture or sale of any of the company's product after December 31, 1945, shall in any manner increase or reduce the price to be paid for shares purchased hereunder, except as provided in Paragraph (3) of this article."

The court below held, and the plaintiff contends here, that the contract contemplated an adjustment on account of income taxes *only* if the company operated at a profit from January 1, 1946 to May 31, 1946. This conclusion follows, it is argued, from the fact that the "formula" makes no provision for the treatment of tax liability in the event of a loss during that period. We do not feel that the omission has the suggested significance. In the event of losses during the first 5 months of 1946, no "formula" is necessary to fix the sum to be used as tax liability in computing book value. It could only be the difference between estimated and actual tax liability. Of greater importance, however, is the failure of the court and of plaintiff to consider the impact of paragraph (4) on the paragraph which precedes it. Paragraph (4) states in effect that there can be an "increase" in book value and a corresponding "increase" in the price of the shares as a result of fluctuation in tax liability. Only if *losses* occurred

could book value and sale price *increase* as the result of tax adjustment. We are agreed, therefore, that the parties to the stock purchase contract manifested therein an intention to hold the tax adjustment factor open until May 31, 1946, the end of plaintiff's fiscal year. At that time, when the actual tax liability was ascertainable, its effect on book value was to be computed and given effect.

The plaintiff argues that this interpretation of the contract gives the defendant Dorothy Messa the benefit of any reduction in taxes, but would not require her to accept a reduction in book value if profits had been earned in the first five months of 1946. The defendants correctly dispose of this argument in their brief. It is pointed out that the Revenue Act of 1945 required a corporate taxpayer operating on a fiscal year to compute its tax liability at both the 1945 and 1946 tax rates. The maximum tax rate for 1945 was approximately 85½ per cent. while in 1946 it was 38 per cent. The profits earned by plaintiff prior to December 31, 1945 were, according to defendants, sufficient to bring it within the maximum tax brackets for both years. The result is that plaintiff would have paid income tax on earnings for the first five months of 1946 at a rate of approximately 65 per cent. It is to be recalled that the "formula" provided that the entire income tax for the full fiscal year was to be reduced by the tax on profits earned after January 1, 1946 "computed at rates in effect for the year 1946". Assuming, therefore, the correctness of defendants' tax data, it certainly follows that earnings by the corporation would have *decreased* the book value of Mrs. Messa's stock just as surely as losses *increased* it. This is true because the tax on profits earned after January 1, 1946 would have been figured at 65 per cent. while the compensating reduction in determining the pur-

chase price of defendant's stock was to be at the 1946 rate of 38 per cent.

The defendants question the treatment of a fee of $5,000 paid by plaintiff to the law firm of Shapiro and Shapiro in August of 1945. With respect to this fee, the court below made the following finding of fact: "On August 1, 1945, the Corporation paid an annual retainer fee to the law firm of Shapiro & Shapiro, covering services for the fiscal year June 1, 1945 to May 31, 1946. This was charged off as an expense." It is the contention of the defendants that this fee should have been apportioned to December 31, 1945 and only seven-twelfths of the fee charged against the stockholders. There is, we feel, merit in the defendants' contention and it will be sustained.

At the trial respective counsel stipulated that the fee paid to Shapiro and Shapiro was "to cover services for the fiscal year from June 1, 1945, to May 31, 1946" and that the law firm "rendered services during that period". The court below held: "The fact that counsel have agreed that the legal fee paid Shapiro & Shapiro for services for one year, in our opinion does not change its character: it was still a retaining fee. A retaining fee, in the ordinary and usual case, covers legal advice to be given over a certain period. The fee was no doubt treated as a business expense, in figuring plaintiff's income tax, and hence Mrs. Messa's stock has had the benefit of it." The plaintiff, arguing in support of the conclusion reached by the court below, quotes the following from 7 C. J. S. 1019-1020, sec. 162: "A retaining fee is a preliminary fee given to an attorney . . . to insure and secure his future services, and induce him to act for the client. It is intended to remunerate counsel for being deprived, by being retained by one party, of the opportunity of rendering services to the other and of receiving pay from him,

and the payment of such fee, *in the absence of an express understanding to the contrary,* is neither made nor received in payment of the services contemplated. . . ." (Italics ours.)

We consider the stipulation of counsel of paramount importance in determining the nature of the retaining fee paid by plaintiff to Shapiro and Shapiro. This stipulation makes it clear that there existed between plaintiff and its counsel an "express understanding" that the fee was paid for contemplated services over the fiscal year and that services were rendered "during that period". Under such circumstances, the fee was *not* simply "a preliminary fee given to an attorney to assure and secure his future services and induce him to act for the client". It is our opinion, therefore, that the fee should have been treated as a prepaid asset when calculating plaintiff's net worth as of December 31, 1945. Mrs. Messa should have received her proportionate share of this asset through adjustment of the purchase price of her stock.

Defendants' final contention is that the court below erred in allowing interest to plaintiff from June 10, 1946 on the net amount found to be due to plaintiff. This contention is without merit. It is argued by defendants that they made a tender to plaintiff in August of 1947 which stopped the running of interest. The alleged tender was made under the following circumstances: On June 25, 1947, defendants gave plaintiff a judgment note payable on demand in the sum of $2,021.76. This note was given as "additional security for the amount due to plaintiff". Judgment was entered on the note on July 2, 1947. Thereafter, the defendants attempted to sell certain real estate and this judgment turned up as an exception when the title was searched. Defendants apparently deposited a sum equal to or in excess of the amount due on the note

with the title company so that the sale could be consummated. Later, Abraham L. Shapiro prepared a letter to satisfy the judgment but, according to his testimony, "payment was withheld because David Shapiro [representing the defendants] thought he was entitled to more than a mere order to mark the judgment satisfied". Defendants insisted on receiving "one or more notes and certain papers evidencing the obligation". There is no evidence that the condition imposed by defendants was a proper one and, therefore, no sufficient tender was made.

The judgment is reversed and the record is remitted to the court below with direction to modify its judgment in accordance with this opinion.