## Citizens Building and Loan Association *v.* Dise et al., Appellants.

Argued June 9, 1959. Before RHODES, P. J., HIRT, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (GUNTHER, J., absent).

*William L. Huganir*, for appellants.

*Alan J. Swotes*, with him *Robert H. Malis*, and *Malis, Malis & Malis*, for appellee.

OPINION BY RHODES, P. J., September 16, 1959:

This is an appeal by defendants from an adjudication and order of the Court of Common Pleas of Montgomery County sustaining an exception to a sheriff's schedule of distribution of the proceeds of real estate and awarding a balance of $2,814.93 to exceptant, Frank A. Jaskiewicz.

The following controlling facts are set forth in the findings and adjudication of the court: On June 20, 1957, Ida M. Dise and Howard J. Dise owned a certain

farm of one hundred twenty acres in Upper Hanover Township, Montgomery County. On July 9, 1957, Howard J. Dise was divorced from Ida M. Dise by a decree of the Court of Common Pleas of Montgomery County. On September 30, 1957, Howard J. Dise entered into a written agreement to sell the farm to Frank A. Jaskiewicz for $25,000. However, on October 2, 1957, the Dise farm was sold at sheriff's sale under a fi. fa. issued by Citizens Building and Loan Association, holder of a mortgage. Jaskiewicz purchased the property at sheriff's sale for $32,500. The sheriff's schedule of distribution showed $2,014.93 (later corrected to $2,814.93) remaining after payment of prior liens payable to the Dises as owners of record. Jaskiewicz filed exceptions to the sheriff's schedule of distribution; he claimed the sum of $2,814.93 under an alleged agreement whereby the Dises were to pay $4,000 as liquidated damages for their failure to carry out the contract of sale at $25,000.

As evidence of this agreement, Jaskiewicz relied on a letter, dated October 25, 1957, signed and sealed by defendants and directing the sheriff to pay the attorney for Jaskiewicz the first $4,000 of the proceeds of the sale after payment of costs and liens of record. Subsequently, in a letter dated November 15, 1957, the Dise attorney attempted to revoke the previous instructions directing payment to Jaskiewicz. Admittedly the effectiveness of this revocation depends upon whether the original direction to the sheriff was given in fulfillment of a legally binding agreement of settlement between the parties.

Depositions of witnesses for the parties were taken at hearings held April 17, 1958, and August 22, 1958. Being of the opinion that all the relevant facts had not been presented, Judge FORREST ordered a further hearing on November 28, 1958. At this informal hearing,

Mr. Strawbridge, attorney for exceptant, and Mr. Huganir, attorney for defendants, though not formally sworn as witnesses, made extended statements to the court. Mr. Strawbridge contended the parties, through their attorneys, had entered into a legally enforceable agreement or settlement to pay $4,000 out of the proceeds of the sale to Jaskiewicz. On the other hand, Mr. Huganir asserted that counsel had only agreed informally and tentatively on what the terms of settlement would be, but had never actually consummated any settlement or agreement, and that therefore defendants' direction to the sheriff as to the payment of $4,000 to Jaskiewicz could be revoked.

Finding of fact No. 14 of the court below is as follows:

"14. On October 25, 1957, defendants Howard J. Dise and Ida M. Dise executed an instrument in writing as of the term and number of this case, addressed to the Sheriff, stating, inter alia, 'We, the undersigned . . . being the defendants named in the above proceeding hereby direct the Sheriff of Montgomery County that the balance of the proceeds payable to them after the payment of all costs and the balances due on the liens of record, be distributed as follows: 1. The first $4,000 to Maxwell Strawbridge, Esquire, attorney for Frank A. Jaskiewicz. 2. The balance in full remaining, to William L. Huganir, attorney for Howard J. Dise.' This instrument was delivered to the Sheriff." On the basis of this finding and the statements of the attorneys for the parties, which were expressly made a part of the record, the court concluded that a definite enforceable agreement existed between exceptant and defendants, evidenced by defendants' signed instructions to the sheriff to pay to Jaskiewicz up to $4,000 of any balance remaining after the sale. The court below concluded then that Jaskiewicz could enforce the agree-

ment of settlement in the present proceeding and that it would be futile to require him to bring an action in equity for specific performance.

Procedure upon exceptions to the schedule of distribution on the sheriff's sale of real estate is governed by the Act of April 10, 1862, P. L. 364, as amended, 12 PS §2670, which states in part: ". . . if exception to the sheriff's return be made by any person interested therein, . . . the court shall proceed to hear and determine the same, as now provided by law in case of disputes as to the distribution of the proceeds of sheriffs' sales." The distribution of the proceeds of a sheriff's sale is to be made according to law and equity. Act of June 16, 1836, P. L. 755, 12 PS §2661. *Donnan v. Barnes,* 272 Pa. 33, 37, 115 A. 883. Cf. *Natoli Appeal,* 186 Pa. Superior Ct. 81, 84, 140 A. 2d 458.

Equitable principles were applied and damages for breach of contract to sell a property were enforced out of the proceeds of a sheriff's sale under substantially similar facts in *Young v. Brady,* 250 Pa. 584, 588, 95 A. 802.

A review of the record discloses ample evidence to support the court's finding that defendants and exceptant, through their attorneys, entered into a compromise agreement or settlement of defendants' contingent liability arising out of the earlier contract of sale for $25,000. This agreement is evidenced by exceptant's Exhibit No. 1, being the written direction to the sheriff, signed and sealed by the defendants, to pay up to $4,000 of the balance of the proceeds of the sale to exceptant; and by the statements of counsel which may be considered in the nature of a stipulation of those facts which are not disputed. It appears therefrom undisputed that the attorney for Jaskiewicz and the Dise attorney negotiated for the settlement of the claim of Jaskiewicz; that the attorneys arrived at a compromise of $4,000;

that the Dises agreed to this; that pursuant to this understanding the attorney for the Dises prepared the instruction to the sheriff to pay the $4,000 to the attorney for Jaskiewicz; that the Dises signed the instructions; that the instructions were delivered to the attorney for Jaskiewicz who in turn delivered them to the sheriff.[1] The wisdom of defendants' entering into such a settlement agreement is unimportant; the fact remains that the evidence is sufficient to sustain the findings and conclusions of the court below that such a settlement was reached. We therefore will not disturb the findings of the court below, sitting without a jury, which have the force and effect of a jury's verdict. *Craft Engineering Company, Inc. v. Messa*, 171 Pa. Superior Ct. 447, 453, 90 A. 2d 628.

Appellants presented evidence by deposition, and through their attorney had full opportunity to be heard in the court below. The statements of the attorneys for both parties at the informal "hearing" on November 28, 1958, were received under agreement of all parties in lieu of testimony. Appellants cannot now object that

---

[1] The Dise attorney stated at the hearing:

"There is no doubt, as I said, that you and I concluded, as you and I put it that day, 'let's split the difference.' All right. In pursuance of an understanding between two lawyers, I prepared an agreement for my client to sign, not an agreement, a document. If we had an agreement wherein both parties signed it, wherein they recognized as to what the situation was, with 'whereases' and 'now therefores,' I think perhaps it would be an enforceable settlement. I submit to you that, at most, here, we have an agreement among counsel as to what a settlement should be, and that the only thing we have on record are instructions to the Sheriff."

Later in the hearing the following colloquy occurred between the court and the Dise attorney:

"The Court: Actually, isn't it a fact that you had talked to each other as friendly lawyers, and then after that, you got your clients to agree to have this money turned over?

"Mr. Huganir: That is exactly right."

the procedure was improper or that the attorneys' statements lacked proper formality.

The order of the court below is affirmed.