414 A.2d 691

**JIM McKAIN FORD, INC.**

v.

**George W. OLIVER and Sara L. Oliver, Appellants.**

Superior Court of Pennsylvania.

Submitted April 11, 1979.

Filed Nov. 21, 1979.

William W. Guthrie, Pittsburgh, for appellants.

James R. Miller, Pittsburgh, for appellee.

Before CERCONE, President Judge, WIEAND and HOFFMAN, JJ.

CERCONE, President Judge:

The question presented is whether there is competent and sufficient evidence of record to support the lower court's conclusions that an implied-in-fact contract of debt assumption existed between plaintiff and defendants, husband and wife, which contract justified recovery by plaintiff-appellee the amount it advanced to a credit company on behalf of defendant-appellants.[1]  Our review of the record

---

1. Although the law is settled that the burden of proving the husband is the agent for the wife is upon the party asserting it, *see Girard Trust Bank v. Sweeney*, 426 Pa. 324, 231 A.2d 407 (1967); *Roman Mosaic & Tile Co. v. Vollrath*, 226 Pa.Super. 215, 313 A.2d 305 (1974), we need not concern ourself with these cases in disposing of appellant's contentions.  Appellants' failure to raise in post-verdict exceptions the argument that Mr. Oliver did not have authority to bind his wife by his representations waives any argument that he was without such authority.  *See* Pa.R.Civ.P. 1038 (1978).  *See also*, Pa.R.Civ.P. 1029(b)(1978) (averments when not denied specifically or by necessary implication are admitted when responsive pleading is

reveals that there is abundant evidence to support the lower court's findings and conclusions of law based thereon; accordingly, we affirm.[2]

On or about April 1, 1975, appellants, Mr. and Mrs. Oliver, purchased a used 1973 Ford automobile (Galaxy) from appellees, Jim McKain Ford, Inc. (McKain). The sale was consummated by an "Automobile Retail Installment Contract," executed by the Olivers, who also signed the required "Verification of Insurance" on the auto. This contract also provided for financing of the purchase price ($2,495.00) by Ford Motor Credit Company (Credit Company). The Olivers accepted delivery of the Galaxy on April 5, 1975, and Mr. Oliver, accompanied by Mrs. Oliver, drove the car from McKain's place of business to a service station, a distance of approximately 10 miles. During this routine stop, some work was performed under the hood. Shortly thereafter, for no apparent reason, the Galaxy ignited in flames and was completely destroyed.

Mr. Oliver informed a McKain representative of the destruction of the auto and arranged to have it towed back to the dealership. Upon the car's arrival, Mr. Hardin, the salesman who had earlier sold the Galaxy to the Olivers, provided Mr. Oliver with a free loaner automobile at the latter's request.[3] At this juncture, the facts are contested by the parties. McKain's agent, Mr. Hardin, testified that Mr. Oliver stated to him "that [Mr. Oliver's] insurance company would take care of [payment for the destroyed vehicle]." Notes of Testimony at 13. The Olivers, however, both testified that neither of them ever made an express personal promise to pay, or a promise that their insurance

required). *See generally,* 2 Goodrich-Amram 2d, *Standard Pennsylvania Practice,* § 1029(b):1, at 271–73 (2d ed. 1976).

2. Our resolution of this issue obviates consideration of appellee's further contention that the lower court judgment may stand on principles of unjust enrichment. *See* Restatement of Contracts, § 347–57 (1932).

3. Mrs. Oliver did not accompany Mr. Oliver on his return trip to McKain. *See* note 1 *supra.*

company would reimburse McKain if McKain satisfied the debt to the Credit Company. Nevertheless, McKain's employees further testified that based upon this alleged promise, and at the request of the Olivers, they not only found the Olivers a similar auto for future purchase, but also paid off the outstanding lien on the Galaxy in order that the Olivers could obtain financing for the proposed second purchase.

Subsequently, the Olivers returned the loaner, and executed another contract for the purchase of a second car.[4] The circumstances surrounding this second purchase are also disputed by the parties. Mr. David Sheft, McKain's used car manager who delivered the second auto to Mr. Oliver, testified that Mr. Oliver again reaffirmed the fact that "he was turning it into his insurance company." Notes of Testimony at 31. Appellants, however, testified that no such statements were made, and furthermore, "[t]here was no statement [McKain] would pay the [Galaxy] off." Notes of Testimony at 54. Approximately a week after this second purchase, the Credit Company,. which had received payment of the outstanding lien on the Galaxy from McKain, mailed the contract governing the initial sale of the Galaxy to the Olivers. While the contract was stamped "lien discharged," Mr. Oliver curiously testified that he never inquired as to who had satisfied the lien. Notes of Testimony at 55.

After repeated demands for the advanced funds, McKain filed a complaint in arbitration. The arbitration panel rendered a decision in favor of McKain for $2,495.00. The Olivers appealed this adverse award to the Court of Common Pleas of Allegheny County. In a nonjury trial held before the Honorable Eunice Ross, verdict was entered against both Olivers for the amount advanced. Timely exceptions to the verdict having been filed and denied by the court *en banc*, this appeal ensued.

4. Apparently, the second installment contract made no reference to any transactions concerning the sale of the Galaxy. *See* Notes of Testimony at 32–33.

Appellants boldly assert that the record before the lower court was "absolutely devoid of any evidence" which would support a finding that the Olivers promised to pay the amount due under the original installment contract to McKain. They further reason that since no such facts could properly be found, the court below erred when it concluded that an implied-in-fact contract existed, which contract was supported by the promise of the Olivers to reimburse McKain in return for McKain's act of satisfying the outstanding lien created by the original installment contract.

In evaluating appellants' contentions our standard of review is a narrow one.

It is axiomatic in the law of this Commonwealth that the findings of fact of a trial judge, sitting without a jury, sustained by the court en banc, have the force and effect of a jury's verdict, and, if based on sufficient evidence, will not be disturbed on appeal.

*Girard Trust Bank v. Sweeney*, 426 Pa. 324, 330, 231 A.2d 407, 411 (1967). *E. g., Adoption of S. H.*, 476 Pa. 608, 611, 383 A.2d 529, 530 (1978); *Citizens Bldg. & Loan Ass'n v. Dise*, 190 Pa.Super. 428, 154 A.2d 304 (1959). As a reviewing court, therefore, we must not only view the testimony in the light most favorable to the verdict winner, *Rubinstein v. J. E. Kunkle Co.*, 244 Pa.Super. 474, 368 A.2d 819 (1976), and grant it the benefit of every reasonable inference therefrom, but also, where as here, the evidence is based upon the testimony of witnesses, we must defer to the lower court's determination of the witness' credibility, *Burston v. Dodson*, 257 Pa.Super. 1, 14, 390 A.2d 216, 222 (1978), absent a clear abuse of the lower court's discretion. *E. g., West Penn Admin., Inc. v. Union Nat. Bank*, 233 Pa.Super. 311, 337, 335 A.2d 725, 737 (1975).

In the case at bar, the account advanced by Mr. Oliver of the two conversations with McKain's agents was rejected by the lower court and found to be "incredible." Thus, the court below found as true that Mr. Oliver made the statement that his insurance company would take care of the purchase price of the Galaxy, a finding which is not seriously

disputed by the Olivers on appeal, and is indeed amply supported by the testimony of McKain's agents. The lower court also found that based upon the relationship of the parties and the circumstances surrounding the conversation, McKain did not intend to make a gratuitous promise of payment of the Olivers' debt, a finding also not disputed on appeal. Further found was the fact that McKain actually advanced the debt amount with the understanding that the Olivers had promised to reimburse the dealership with funds from their insurance proceeds.[5] From the above threshold findings of fact, the lower court reasoned that an implied-in-fact contract for repayment of the amount advanced existed.

The Olivers argue, even assuming the above findings are supported by the evidence, that the legal conclusion reached by the lower court is not supported by those findings. More specifically, the Olivers reason that any statement by Mr. Oliver that *someone else* was going to pay, namely their insurance company, is not a promise that the Olivers would reimburse McKain for discharging the lien in question.

The Olivers' argument rests upon an interpretation of the parties conversations which is neither rational nor consonant with the law of contracts. Would a reasonable merchant in the position of McKain interpret the statement that the Olivers' insurance company would take care of it, as a restriction upon the liability of the Olivers for a loan of funds, or rather as a description of the method or payment, or of the source from which the funds were expected? In answering this question of interpretation, it is significant that the insurance company was never a party to the conversations, nor did the "Verification of Insurance" executed by the Olivers authorize them to represent the insurance company's interest. In this regard, the actual subject matter of the conversations was not who was ultimately to be liable for the destruction of the Galaxy, *but rather how the Olivers would be able to furnish the purchase price for the second*

---

**5.** Mr. McKain, the owner of the dealership, derived his understanding of the transactions from conversations he had with Mr. Hardin and Mr. Sheft prior to paying the credit company.

*automobile*.[6] The natural implications of the conversations, according to McKain's evidence, was that, in the absence of a means to discharge the initial lien, the Olivers would be unable to finance the second vehicle, which McKain had located for purchase at the Olivers' request.

Construing the evidence in the light most favorable to McKain, the net legal result of the terms of the conversation was that the offeror, the Olivers, made a conditional promise to repay the moneys advanced in return for McKain's act of paying off the Oliver's pre-existing debt to the Credit Company. The Olivers' performance became due when McKain discharged the Olivers' debt, which debt McKain had no obligation to satisfy by any pre-existing contractual agreement with the Credit Company. Under these circumstances, there is unquestionably detriment to McKain and a legal benefit to the Olivers, as the principal debt they owed to the creditor was extinguished by McKain's payment. Since McKain's interpretation of the Olivers' agreement has not been shown to be unreasonable in view of all the evidence, we fail to see how this implied-in-fact contract was any less supported by a valid consideration than if McKain had paid the money directly to the Olivers themselves. *See* 1 S. Williston, Contracts, § 113, at 451 n.11 (3d ed. & Supp. 1979). The Olivers have cited no case, nor has our research disclosed one, which stands for the proposition that when the party receiving the benefit states that someone else will provide the funds for repayment, this precludes the benefited party from being the primary contracting party and directly responsible for the repayment. *Compare Finnerty v. Shade*, 210 Iowa 1338, 228 N.W. 886 (1930) and *Southern Realty Co. v. Hannon*, 89 Neb. 802, 132 N.W. 533 (1911).

Order of the lower court affirmed.

6.  Mr. Hardin's uncontradicted testimony established that no mention was made of *replacing* the Galaxy under its limited 50/50 warranty. Mr. Sheft's testimony as to what transpired when the Olivers picked up the second auto is consistent with Mr. Hardin's. This second conversation also focused upon *payment* not *liability*.

WIEAND, J., concurs in the result.

HOFFMAN, J., files a dissenting statement.

HOFFMAN, Judge, dissenting:

I disagree with the majority's conclusion that the Olivers' view of the events herein "rests upon an interpretation of the parties [sic] conversations which is neither rational nor consonant with the law of contracts." At 694. I do not believe that Mr. Oliver's conduct, including his statements that his insurance company would pay for the destroyed automobile, constituted an implied promise that he would be personally liable to McKain for the latter's assumption of the Olivers' debt to the Credit Company. Accordingly, I dissent.