601 A.2d 292

**Joseph COLLINCINI**

v.

**HONEYWELL, INC., Appellant.**

Superior Court of Pennsylvania.

Argued Aug. 22, 1991.

Filed Nov. 26, 1991.

Reargument Denied Jan. 31, 1992.

Petition for Allowance of Appeal
Denied June 9, 1992.

Joseph Brooks, Washington D.C., for appellant.

Vicki Kuftic Horne, Pittsburgh, for appellee.

Before WIEAND, CIRILLO and JOHNSON, JJ.

CIRILLO, Judge:

This is an appeal from a judgment entered in the Court of Common Pleas of Allegheny County awarding appellee Joseph Collincini $100,000.00 in compensatory damages and $400,000.00 in punitive damages from appellant Honeywell, Inc. We affirm.

Appellee Collincini worked for appellant Honeywell, Inc. ("Honeywell") in the Industrial Services Division in Pittsburgh from 1972 until he was discharged in 1986. Six weeks after separating from Honeywell, Collincini began working in the Pittsburgh area for American Technical Services, Inc. ("ATS"), a minor competitor of Honeywell's. Part of Collincini's job at ATS was selling maintenance service contracts similar to those he sold for Honeywell.

Three months after Collincini began working for ATS, counsel for Honeywell wrote to the president of ATS in Georgia, complaining that Collincini was using proprietary

information from Honeywell and "engaging in unfair competition against Honeywell and wrongful interference with Honeywell contractual relations with third party customers." After listing contracts lost to ATS, Honeywell's attorney continued:

Honeywell is certain that ATS, as a responsible company, will investigate Mr. Collincini's actions and prevent their recurrence. Should such unfair practices continue, Honeywell will pursue its available legal remedies to the fullest.

In response, ATS stated that it would check into the matter, and requested copies of any agreements or forms, regarding Honeywell proprietary information, that Collincini had signed. Honeywell sent a copy of the application form Collincini had signed when he began working for Honeywell. The application contained no reference to a non-compete clause.

Three weeks later counsel for Honeywell wrote a second letter to the president of ATS, in which she detailed "two additional instances of Mr. Collincini's continuing wrongful interference with Honeywell contractual relations" and also accused Collincini of using inside information to take business away from Honeywell. The letter concluded with the admonition that, "Honeywell expects evidence of good faith action taken by ATS to end these practices immediately." One week later Collincini was dismissed from ATS.

Collincini sued Honeywell for intentional interference with known contractual relations, and for defamation.[1] Honeywell counterclaimed for monies due and still owed by Collincini under the terms of his employment contract with them. The jury found in favor of Collincini on the complaint of tortious interference with a contract, awarding him both compensatory and punitive damages, and found for

---

1. In his original complaint Collincini sued ATS as well as Honeywell for tortious interference and defamation. Both counts against ATS were dismissed with prejudice in pre-trial proceedings. In his amended complaint Collincini sued ATS for wrongful discharge, but that count was discontinued by a consent order. Thus Honeywell was the only defendant at trial.

Honeywell on the defamation complaint. The jury also found in favor of Honeywell on the counterclaim, and awarded the company damages in the amount owed.[2] Both parties filed post-trial motions which were denied. This timely appeal followed.

Honeywell raises five issues for our consideration: 1) whether hearsay evidence admitted without objection is legally sufficient to support a verdict in favor of the appellee; 2) whether letters, containing true statements of fact and an opinion based on those facts, written to appellee's employer, can constitute tortious conduct on the part of a former employer; 3) whether the failure to include a timely requested instruction in the charge to the jury requires the granting of a new trial; 4) whether failure to mitigate damages bars recovery; and 5) whether failure to instruct the jury that punitive damages must bear a reasonable relationship to compenstory damages warrants a new trial.

Our standard of review of an order denying judgment notwithstanding the verdict is whether there was sufficient competent evidence to sustain the verdict. *Wenrick v. Schloemann–Siemag Aktiengesellschaft, et al.,* 523 Pa. 1, 4, 564 A.2d 1244, 1246 (1989). To make that determination we must consider all the evidence received, whether the trial court ruled correctly on its admissibility or not. *Lira v. Albert Einstein Medical Center,* 384 Pa.Super. 503, 508, 559 A.2d 550, 552 (1989). We must also afford the verdict winner the benefit of every inference which may reasonably be drawn from the evidence, while rejecting all unfavorable testimony and inferences. *Ingrassia Construction Company, Inc. v. Walsh,* 337 Pa.Super. 58, 61, 486 A.2d 478, 480 (1984). Judgment notwithstanding the verdict may be granted only in a clear case where the facts

**2.** Honeywell has a system of "travelchecks" which their sales force can use either to obtain advance funds or reimbursement for business travel expenses. Collincini had written two dishonored checks to Honeywell and had failed to repay unused travelcheck advances. After his final paycheck was withheld, Collincini still owed Honeywell $1812.34. The jury awarded Honeywell $1812.34, plus six percent interest.

are such that no two reasonable minds could fail to agree that the verdict was improper. *Gray v. H.C. Duke & Sons, Inc.*, 387 Pa.Super. 95, 563 A.2d 1201 (1989). We note that judgment n.o.v. may *not* be employed to invade the province of the jury. *Trawick v. Nationwide Mutual Insurance Co.*, 242 Pa.Super. 271, 363 A.2d 1265 (1976). Thus when there is a question of fact to be resolved, it is within the sole purview of the jury. *Id.*

The standard of review for an order denying a motion for a new trial is whether the trial court clearly and palpably abused its discretion or committed an error of law which controlled the outcome of the case. *Stevenson v. General Motors Corp.*, 513 Pa. 411, 425, 521 A.2d 413, 420–421 (1987). If support for the trial court's decision is found in the record, the order must be affirmed. *Commonwealth ex rel. Meyers v. Stern*, 509 Pa. 260, 264, 501 A.2d 1380, 1382 (1985). When the record is reviewed in light of these principles, it is clear that the jury's verdict in favor of Collincini must stand.

█ Honeywell first contends that the hearsay statement of John Relja is insufficient without corroboration to sustain a finding that Honeywell's letters to ATS were the proximate cause of Collincini's dismissal. We disagree. Relja was the branch manager for the Pittsburgh office and Collincini's supervisor at ATS. Relja testified at trial that his own supervisor, John Timiny, had explained Collincini's dismissal as follows: "Honeywell wrote letters to the president [of ATS], Mr. Hennig, and they were putting pressure on him, and the easiest way out of his situation was to let Joe Collincini go." Honeywell neglected to object to Relja's testimony and it was admitted into evidence.

"It is well established that hearsay evidence, admitted without objection, is *accorded the same weight* as evidence legally admissible as long as it is relevant and material to the issues in question." *Jones v. Spidle*, 446 Pa. 103, 106, 286 A.2d 366, 367 (1971) (citations omitted) (emphasis supplied). It is also well established in the Commonwealth that the weight and credibility to be accorded evidence is up to

the factfinder to determine. *See Wilson v. Benjamin*, 332 Pa.Super. 211, 481 A.2d 328 (1984); *Jim McKain Ford, Inc. v. Oliver*, 272 Pa.Super. 104, 414 A.2d 691 (1978). Relja's testimony about the explanation given him for Collincini's termination was both relevant and material. Honeywell does not contest that it had the opportunity at trial to object to the admission of the hearsay statement, and that it failed to do so. Therefore, Honeywell cannot now be heard to complain about the consequences of its failure to act. The jury as the factfinder was free to believe—or disbelieve—Relja's testimony. The jury chose to believe his testimony, and chose to attribute Honeywell's communications with ATS as the proximate cause of Collincini's dismissal. "It is *not* within this court's province to weigh the evidence or to render judgments as to credibility." *Ingrassia Construction Company, Inc.*, 337 Pa.Super. at 62, 486 A.2d at 480 (emphasis added). Viewing the evidence in the light most favorable to Collincini, as verdict winner, we find that there was sufficient competent evidence to support the jury's determination of proximate cause. *Id.*

██ Honeywell next contends that its letters to the president of ATS cannot constitute tortious conduct because the letters only contain statements of fact and opinions based on those facts. We disagree. In *Birl v. Philadelphia Electric Company*, 402 Pa. 297, 167 A.2d 472 (1960), our supreme court, citing the *Restatement of Torts*, Section 766, stated: "It is generally recognized that one has the right to pursue his business relations or employment free from interference on the part of other persons except where such interference is justified or constitutes an exercise of absolute right." *Id.*, 402 Pa. at 300, 167 A.2d at 474 (1960). Here Honeywell claims no absolute right; it merely insists that since the statements in its letters are true the letters cannot be tortious. Such reasoning is fallacious.

For the tort of intentional interference with contractual relations to lie: "[T]he actor must act (1) for the purpose of causing this specific type of harm to the plaintiff, (2) such act must be unprivileged, and (3) the harm must actually

result." *Id.* The first element of purpose or intent need not be malice or ill will; rather, it refers to purposeful interference without justification. *Id.* As this court stated in *Geyer v. Steinbronn*, 351 Pa.Super. 536, 553, 506 A.2d 901, 910 (1986), it will be the rare defendant who admits he did intend to interfere with the plaintiff's contractual relations. "Therefore, the jury usually will be called upon to draw an inference from circumstantial evidence. The defendant's state of mind and possible motives are certainly relevant to the inquiry even if ill will per se is not a requisite." *Id.*

Within weeks of joining ATS, Collincini was successful in convincing a few companies to transfer their maintenance contracts at their contract renewal dates from Honeywell to ATS. Honeywell, which is a much larger entity in the marketplace, responded by having its legal department write to ATS several times, claiming that Collincini was engaging in unfair competition and pressuring ATS to put a stop to it. Evidence admitted at trial indicated that Honeywell knew at the time the first letter was written that it had no cause of action against Collincini or ATS. Despite that knowledge, Honeywell wrote and threatened legal action if ATS did not instruct Collincini to cease soliciting contract renewals from Honeywell customers. Collincini had never signed a non-compete contract with Honeywell, and the proprietary information and trade secrets he was accused of using consisted of nothing more than unclassified information available on the open market. *See Spring Steels, Inc. v. Malloy*, 400 Pa. 354, 162 A.2d 370 (1960); *Fidelity Fund, Inc. v. DiSanto*, 347 Pa.Super. 112, 500 A.2d 431 (1985). Moreover, Honeywell never contacted Collincini directly to complain about his behavior. Instead, it chose to write directly to Collincini's employer on three different occasions. We conclude that the record contains ample evidence from which the jury could infer that Honeywell intentionally interfered with Collincini's employment relationship with ATS.

Honeywell next contends that the trial court's failure to include Honeywell's fourteenth point of requested instruction in its charge to the jury mandates a new trial.[3] We disagree.

> It is well settled in our Commonwealth that when the propriety of the jury instruction of the trial court is at issue, those instructions must be viewed *in toto* to determine if any error has been committed. Unless the charge as a whole can be demonstrated to have caused prejudicial error, we will not reverse for isolated inaccuracies. (citations omitted).

*Pachesky v. Getz,* 353 Pa.Super. 505, 511, 510 A.2d 776, 779 (1986), quoting *Riddle Memorial Hospital v. Dohan,* 504 Pa. 571, 576, 475 A.2d 1314, 1316 (1984). A trial court judge has wide latitude in instructing a jury, and he or she may use any language of his or her choice as long as the questions and issues to be resolved are clear. *Pagesh v. Ucman,* 403 Pa.Super. 549, 589 A.2d 747, 749 (1991).

We have reviewed the jury instructions in their entirety, and we find that the trial court adequately addressed each of the pertinent issues presented at trial. The trial court was under no obligation to include Honeywell's fourteenth point in its charge to the jury. Honeywell's suggested fourteenth point is a misstatement of the law, and as such was not relevant. Truth is an absolute defense to defamation; it is *not* a defense to intentional interference with contractual relations. Furthermore, while Honeywell's list of contract renewals lost to ATS might be factually correct, its characterization of the information Collincini relied on to obtain those contracts as proprietary or trade secrets is

---

**3.** Honeywell's requested instruction reads:
  The 1st Amendment of the U.S. Constitution protects the freedom of speech, and the freedom to have opinions. If the defendant assembled and communicated to plaintiff's subsequent employer a statement of facts pertaining to plaintiff's conduct and presented a legal argument or legal opinion why such conduct violated defendant's legal rights, and if the facts presented were substantially true, then the defendant cannot incur liability to the plaintiff.

false as a matter of law.[4] *See Van Products Co. v. General Welding and Fabricating Company,* 419 Pa. 248, 213 A.2d 769 (1965); *See also Carl A. Colteryahn Dairy, Inc. v. Schneider Dairy,* 415 Pa. 276, 203 A.2d 469 (1964).

▪ Honeywell next insists that since Collincini frequented the racetrack for a year instead of taking another sales job, he failed to mitigate his damages as the law requires and thus should be barred from any recovery. This argument has no merit. Honeywell has misapprehended and misapplied the doctrine of mitigation of damages. It is axiomatic that the doctrine of mitigation of damages addresses the *amount* of damages to be awarded once liability has been established; it has no bearing whatsoever on the underlying determination of liability. Once the jury found Honeywell liable to Collincini for tortious interference with contractual relations, any alleged failure on Collincini's part to mitigate his loss of income damages only affected the amount of his compensatory damage award, and not his entitlement to it.

▪ Finally, Honeywell contends that the trial court's failure to instruct the jury that punitive damages must bear a reasonable relationship to compensatory damages warrants a new trial. Honeywell's contention is contrary to Pennsylvania law. Our supreme court has stated:

4. Our supreme court has stated that "the employee, upon terminating his employment relationship with his employer, is entitled to take with him the 'experience, knowledge, memory, and skill, which he had gained while there employed.'" *Van Products Co. v. General Welding & Fabricating Co.,* 419 Pa. 248, 259–61, 213 A.2d 769, 776 (1965) (citations omitted). The court continued to explain that "'the intimate knowledge of the need, use and demand' for this product could not be a trade secret. It is something that would be learned in any productive industry, as are the 'material sources and costs ... labor costs ... the suppliers and accounts payable ... customers and accounts receiveable ... and advertising methods and material.'" *Id.* Although the court was discussing a product in *Van Products, supra,* the principle is equally applicable to services. In the case at hand, Collincini's knowledge of contract renewal dates was a result of his "general knowledge, skill and experience," *Van Products, supra,* in the field and resulted from nothing more than "the intimate knowledge of the need, use and demand" for the particular kind of service maintenance contract that both Honeywell and ATS sold. *Id.*

If the purpose of punitive damages is to punish a tort-feasor for outrageous conduct and to deter him or others from similar conduct, then a requirement of proportionality defeats that purpose. It is for this reason that the wealth of the tortfeasor is relevant. In making its determination, the jury has the function of weighing the conduct of the tortfeasor against the amount of damages which would deter such future conduct. In performing this duty, the jury must weigh the intended harm against the tortfeasor's wealth.

*Kirkbridge v. Lisbon Contractors, Inc.*, 521 Pa. 97, 103, 555 A.2d 800, 803 (1989). The jury heard evidence that from 1986 through 1988 Honeywell averaged six billion dollars in gross sales and a quarter of a billion dollars in net profit each year. Given Honeywell's substantial resources and the jury's determination that Honeywell intentionally interfered with Collincini's employment with ATS, we cannot say that the $400,000.00 in punitive damages should shock the trial court's sense of justice. *Kirkbridge, supra.*

Judgment affirmed.