**WALNUT STREET ASSOCIATES, INC.,**

v.

**BROKERAGE CONCEPTS, INC. and Kimberly Macrone,**

**Appeal of Brokerage Concepts, Inc.**

Superior Court of Pennsylvania.

Argued Feb. 25, 2009.
Filed Sept. 22, 2009.

---

A. Richard Feldman, Philadelphia, for appellant.

Steven E. Angstreich, Philadelphia, for appellee.

BEFORE: ORIE MELVIN, BOWES and DONOHUE, JJ.

OPINION BY DONOHUE, J.:

¶ 1 Appellant, Brokerage Concepts, Inc. ("BCI"), appeals from the October 31, 2007 order denying its post-trial motions for judgment notwithstanding the verdict or a new trial and entering judgment in favor of Appellee, Walnut Street Associates, Inc. ("Walnut Street"). After careful review,

we conclude that in accordance with the Restatement (Second) of Torts § 772(a), true statements may not be the basis for a claim of intentional interference with contractual relationships. Accordingly, we reverse and remand for entry of judgment notwithstanding the verdict in favor of BCI.

¶ 2 The relevant facts and procedural history of this case are as follows. Walnut Street provides insurance brokerage services and assists employers in obtaining health insurance benefits for their employees. In the 1980's, Walnut Street was appointed broker of record for Procacci Brothers Sales Corp. ("Procacci"), a self-funded insurer with separate plans for its union and non-union employees. In 1994, at the recommendation of Walnut Street, Procacci retained BCI, a third-party administrator ("TPA") of self-funded employee benefit plans, as TPA for its two self-funded plans. BCI, in turn, paid Walnut Street commissions based on the premiums paid by the Procacci plans.

¶ 3 On March 1, 2005, after BCI refused to meet a proposal to lower its costs, Procacci notified BCI that as of March 16, 2005, it was moving its union plan from BCI to a new and less costly TPA, Loomis Company ("Loomis"). On March 2, 2005, Kimberly Macrone ("Macrone"), a sales representative employed by BCI, wrote a letter to Procacci asking that it reconsider its decision. Among other things, Macrone's letter informed Procacci of the amount of commission Walnut Street earned on the nonunion plan. Shortly thereafter, Procacci terminated Walnut Street as its broker of record. On March 10, 2005, BCI stopped payment on a commission check to Walnut Street.

¶ 4 In August 2005, Walnut Street commenced the action underlying this appeal against BCI and Macrone. The complaint contained four counts. The first three sought recovery from BCI for unpaid commissions, while the fourth alleged tortious interference with contractual relations. In November 2006, after BCI paid the disputed commissions, plus interest, the trial court granted summary judgment on Counts I, II and III. Summary judgment on Count IV was denied. The parties proceeded to a jury trial on the tortious interference claim. At the close of evidence, Walnut Street entered a voluntary non-suit with respect to Macrone. On June 29, 2007, the jury entered a verdict in favor of Walnut Street and awarded it $330,000 in compensatory damages. BCI filed post-trial motions for judgment notwithstanding the verdict ("JNOV") or in the alternative, a new trial. The trial court denied both motions, and entered judgment in favor of Walnut Street and against BCI.

¶ 5 On appeal, BCI raises the following two issues and sub-issues:

I. Whether the trial court should have directed a judgment in [BCI's] favor because:

   A. the statements in BCI's letter to Procacci causing [Walnut Street's] termination were true, and therefore could not serve as the basis for a tortious interference claim under Pennsylvania law, or, in the alternative, under the law of New Jersey, which has the most significant relationship to this issue; [1]

   B. the imposition of tortious interference liability for the making of

---

1. The trial court ruled that BCI waived the issue of the applicability of New Jersey law because it was not raised in a pleading or motion. Trial Court Opinion, 8/6/08, at 5 n.

15. We need not address this issue, however, because we conclude that Pennsylvania and New Jersey law do not differ on the law dispositive of this appeal.

truthful statements is unconstitutional under the First Amendment and the Pennsylvania Constitution, where no countervailing state interests have been identified;

C. BCI's conduct was privileged either under the competition privilege or under the business interest privilege; or

D. [Walnut Street] provided no evidence of lost profits but only of lost revenues, and the revenue evidence itself was so insufficient as to render the damages claim purely speculative, with the result that [Walnut Street] failed to prove an essential element of his claim?

II. Whether the trial court should have granted BCI's motion for a new trial because of prejudicial error with respect to one or more of six jury instructions, as follows:

A. the failure to give a charge that a plaintiff cannot ground his cause of action upon his own fraud;

B. the failure to instruct the jury on the meaning of "wrongful means," an essential element of BCI's competition privilege defense;

C. the similar failure to define the term "proper means," essential to BCI's business interest privilege defense;

D. the giving of an erroneous charge to the jury defining lost profits as consisting solely of lost revenues, without regard to the need to subtract out the costs of producing those revenues;

E. the failure to instruct the jury that damages for lost profits

must be proved to a reasonable certainty and cannot be speculative; or

F. the failure to instruct the jury that truthful statements cannot be the basis for tortious interference liability?

Appellant's Brief at 3–4.

■ ¶ 6 Under our applicable standard of review, we will reverse a trial court's denial of a motion for JNOV or a new trial only if we find an abuse of discretion or an error of law that controlled the outcome of the case. *Hutchinson v. Penske Truck Leasing Co.*, 876 A.2d 978, 984 (Pa.Super.2005), *affirmed*, 592 Pa. 38, 922 A.2d 890 (2007). When, as here, the issue raised on appeal presents a question of law, our standard of review is *de novo* and our scope of review is plenary. *See Dooner v. DiDonato*, —— Pa. ——, 971 A.2d 1187, 1193 (2009).

¶ 7 In its first claim on appeal, BCI argues that the trial court erred in denying its post-trial motion for JNOV because the allegedly interfering statements made to Procacci were truthful and thus may not serve as a basis for a claim for tortious interference with contractual relationships. Appellant's Brief at 19. For the reasons that follow, we agree and reverse the trial court's order.

■ ¶ 8 The tort of intentional interference with existing contractual relationships is governed by section 766 of the Restatement (Second) of Torts, which our Supreme Court adopted in *Adler, Barish, Daniels, Levin & Creskoff v. Epstein*, 482 Pa. 416, 393 A.2d 1175 (1978), *appeal dismissed and cert. denied*, 442 U.S. 907, 99 S.Ct. 2817, 61 L.Ed.2d 272 (1979).[2] Section 766 provides as follows:

---

**2.** In *Adler Barish*, our Supreme Court adopted a tentative draft of section 766 of the Restatement (Second) of Torts, which was substantially identical to the version of section 766

One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

Rest. 2d Torts § 766 (1979); *see also York Group v. Yorktowne Caskets, Inc.*, 924 A.2d 1234, 1249–50 (Pa.Super.2007); *Reading Radio, Inc. v. Fink, et al.*, 833 A.2d 199, 211 (Pa.Super.2003), *appeal denied*, 577 Pa. 723, 847 A.2d 1287 (2004); *Triffin v. Janssen*, 426 Pa.Super. 57, 626 A.2d 571, 574 (1993), *appeal denied*, 536 Pa. 646, 639 A.2d 32 (1994). The necessary elements of the cause of action are (1) the existence of a contractual relationship between the complainant and a third party; (2) an intent on the part of the defendant to harm the plaintiff by interfering with that contractual relationship; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual damage as a result of defendant's conduct. *Phillips v. Selig*, 959 A.2d 420, 429 (Pa.Super.2008), *appeal denied*, 600 Pa. 764, 967 A.2d 960 (2009); *Small v. Juniata College*, 452 Pa.Super. 410, 682 A.2d 350, 354 (1996), *appeal denied*, 689 A.2d 235 (1997); *Triffin*, 626 A.2d at 574.

¶ 9 The record on appeal in this case contains sufficient evidence to support the jury's findings with regard to the first, second, and fourth elements of the tort, and our focus here is on the third element (absence of privilege or justification). The third element requires proof that the defendant's actions were *improper* under the circumstances presented, which is generally determined through consideration of the factors listed in Restatement (Second) of Torts section 767:

In determining whether an actor's conduct in intentionally interfering with a contract ... is improper or not, consideration is given to the following factors: (a) the nature of the actor's conduct; (b) the actor's motive; (c) the interests of the others with which the actor's conduct interferes; (d) the interests sought to be advanced by the actor; (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other; (f) the proximity or remoteness of the actor's conduct to the interference; and (g) the relations between the parties.

Restatement (Second) of Torts § 767 (1979); *see, e.g., Adler Barish*, 482 Pa. at 433, 393 A.2d at 1184; *Phillips*, 959 A.2d at 429–30; *Triffin*, 626 A.2d at 574. Comment b to section 767 makes clear that under certain circumstances, "the conduct should be permitted without liability, despite its effect of harm to another," and thus the decision "depends upon a judgment and choice of values in each situation." Restatement (Second) of Torts § 767 cmt. b (1979).

¶ 10 In addition to the analysis of the factors listed in section 767, sections 768 through 773 of the Restatement (Second) set forth specific circumstances in which interference with contractual relationships

published the following year. *Adler Barish*, 482 Pa. at 431, 393 A.2d at 1183. The Supreme Court reaffirmed its adoption of section 766 of the Restatement (Second) of Torts in *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 412 A.2d 466 (1979). The Supreme Court's adoption of section 766 of the Restatement (Second) followed its previous adoption of the similar section 766 of the Restatement (First) of Torts (1939). *See Birl v. Philadelphia Electric Co.*, 402 Pa. 297, 300–01, 167 A.2d 472, 474 (1960); *Glenn v. Point Park College*, 441 Pa. 474, 477, 272 A.2d 895, 897 (1971).

is *not* improper.[3] Relevant to this case is section 772, including in particular subsection 772(a):

> One who intentionally causes a third person not to perform a contract or not to enter into a prospective contractual relation with another does not interfere improperly with the other's contractual relation, by giving the third person
>
> (a) *truthful information,* or
>
> (b) honest advice within the scope of a request for the advice.

Restatement (Second) of Torts § 772 (1979) (emphasis added). With regard to subsection 772(a), comment b explains that:

> There is of course no liability for interference with a contract or with a prospective contractual relation on the part of one who merely gives truthful information to another. The interference in this instance is clearly not improper. This is true even though the facts are marshaled in such a way that they speak for themselves and the person to whom the information is given immediately recognizes them as a reason for breaking his contract or refusing to deal with another. It is also true whether or not the information is requested.

Restatement (Second) of Torts § 772 cmt. b (1979).

■ ¶ 11 In this case, both parties agree that the statements made by Macrone to Procacci regarding Walnut Street's earned commission on the Procacci non-union plan contained only *truthful information.* See Appellant's Brief at 11; Appellee's Brief at 5. At trial, Jeffrey Wallner, Walnut Street's principal, conceded that Macrone's statements regarding the amount of commission Walnut Street earned on Procacci's non-union plan were correct. N.T., 6/28/07, at 151. The evidence further demonstrated that this disclosure by Macrone of the amount of Walnut Street's commission led Procacci to terminate Walnut Street as its broker of record. *Id.* at 175. Accordingly, if Pennsylvania follows Restatement section 772(a), then the trial

---

**3.** This Court has recognized and applied several of these Restatement (Second) provisions. Section 768 provides that one "does not interfere improperly" when the actions at issue constitute reasonable business competition between competitors. Restatement (Second) of Torts § 768 (1979); *see, e.g., Gilbert v. Otterson,* 379 Pa.Super. 481, 550 A.2d 550, 554 (1988) ("this right to compete included the right to divert business from Otterson"), *appeal denied,* 522 Pa. 596, 562 A.2d 320 (1989); *Phillips,* 959 A.2d at 431. Section 769 provides that a person having a financial interest in the business of the person induced not to enter into a prospective contractual relationship "does not interfere improperly" if he does not employ wrongful means in doing so. Restatement (Second) of Torts § 769 (1979); *Yaindl v. Ingersoll–Rand Co.,* 281 Pa.Super. 560, 422 A.2d 611, 625 (1980) (citing section 769 with approval), *abrogation on other grounds recognized by Yetter v. Ward Trucking Corp.,* 401 Pa.Super. 467, 585 A.2d 1022 (1991) (citing *Paul v. Lankenau Hosp.,* 524 Pa. 90, 569 A.2d 346 (1990) and *Clay v.*

*Advanced Computer Applications,* 522 Pa. 86, 559 A.2d 917 (1989)). And section 773 indicates that an actor "does not interfere improperly" when asserting in good faith, or threatening to assert in good faith, a *bona fide* legally protected interest or claim. Restatement (Second) of Torts § 773 (1979); *Kelly–Springfield Tire Co. v. D'Ambro,* 408 Pa.Super. 301, 596 A.2d 867, 872 (1991) (applying section 773).

No Pennsylvania appellate court has addressed the applicability of Restatement (Second) sections 770 or 771. Section 770 provides that a person responsible for the welfare of another "does not interfere improperly in causing that person not to enter into a prospective contract or perform under an existing one so long as he does not employ wrongful means. Restatement (Second) of Torts § 770 (1979). Section 771 states that an actor "does not interfere improperly" under specified circumstances if his purpose is to influence the other's business policy. Restatement (Second) of Torts § 771 (1979).

court erred in not granting JNOV to BCI because Macrone's truthful statements to Procacci were not improper as a matter of law and thus could not serve as the basis for a tortious interference claim.[4]

¶ 12 Our Supreme Court has never addressed the applicability of section 772(a) in a published decision. More generally, however, it has made clear that with respect to intentional interference claims, Pennsylvania is a "Restatement state" and that accordingly it has "repeatedly looked to the Restatement as authority for the elements of a cause of action for intentional interference with existing contract relations." *Adler Barish,* 482 Pa. at 430 n. 13, 393 A.2d at 1182 n. 13. Moreover, in *Menefee v. Columbia Broadcasting Sys.,* 458 Pa. 46, 329 A.2d 216, (1974), our Supreme Court adopted what is now section 772(b) of the Restatement (Second),[5] which states that providing "honest advice within the scope of a request for the advice" does not constitute an improper interference. *Id.* at 56, 329 A.2d at 221.

■ ¶ 13 This Court has recognized section 772(a) in two decided cases. In *Yaindl,* an employee sued his former employer for interfering with a prospective employment relationship. This Court evaluated this claim as one sounding in tortious interference with a prospective contractual relationship,[6] and concluded that the trial court erred in granting summary judgment to the former employer because issues of material fact remained regarding whether it knowingly made certain misrepresentations to the employee's prospective employer. After setting forth the potential misrepresentations, this Court noted that the jury could also determine that the information conveyed to the prospective employer was true—in which case no cause of action would lie by application of section 772(a):

> Of course, were the jury to conclude that [the former employer] imparted *only truthful information* to [the prospective employer], [the former employer's] interference would not be improper. Restatement (Second) of Torts s 772 (1979).

*Id.* at 623 n. 12 (emphasis added).

¶ 14 Similarly, in *Geyer v. Steinbronn,* 351 Pa.Super. 536, 506 A.2d 901 (1986), an employee sued his former employer for interfering with a prospective employment relationship. In affirming the judgment entered on a jury verdict in favor of the employee, this Court cited to section 772(a) in connection with the former employer's contention that all of the information given to the prospective employer was thought to be truthful at the time it was conveyed. *Id.* at 910. While implying that section 772(a) would have applied if the statements at issue were true, we nevertheless concluded that sufficient evidence existed for the jury to find that the former employer's statements were not true, and that in fact

---

4. Although raised below by BCI on multiple occasions (trial memorandum, nonsuit motion, proposed jury instructions, motion for directed verdict, and post-trial motions), the trial court did not discuss the applicability of Restatement (Second) section 772(a) in its written opinion.

5. The Supreme Court in *Menefee* adopted section 772 of the Restatement (First) of Torts (1939), which included on the "honest advice" defense now found in section 772(b). Section 772 of the Restatement (First) did not contain the defense of providing "truthful information" now found in section 772(a) of the Restatement (Second).

6. Pennsylvania recognizes the tort of tortious interference with prospective contractual relationships, as defined by Restatement (Second) § 766B (1979). *See, e.g., S.N.T. Industries, Inc. v. Geanopulos,* 363 Pa.Super. 97, 525 A.2d 736, 739 (1987) (*citing Glenn v. Point Park College,* 441 Pa. 474, 272 A.2d 895 (1971)), *appeal denied,* 520 Pa. 577, 549 A.2d 137 (1988).

considerable evidence existed to support a finding that the former employer knew that some of its statements were false. *Id.*

■ ¶ 15 When dealing with an issue not previously addressed by our Supreme Court, it is this Court's job to predict how our Supreme Court would reason and resolve the issue. *See, e.g., Lehn's Court Mgmt. LLC v. My Mouna, Inc.,* 837 A.2d 504, 507 (Pa.Super.2003). Based upon our Supreme Court's directive in *Adler Barish* that this Commonwealth follows the Restatement in connection with intentional interference claims as well as its adoption of section 772(b) in *Menefee,* we predict that it will adopt section 772(a) if and when it addresses the issue. We also note that this Court has adopted and applied related Restatement (Second) sections 768, 769, and 773 (see footnote 3 *supra*), and has previously cited section 772(a) with approval in both *Yaindl* and *Geyer.* Finally, the courts of sister jurisdictions have nearly universally adopted section 772(a) of the Restatement (Second).[7]

¶ 16 Walnut Street contends that our decision in *Collincini v. Honeywell, Inc.,* 411 Pa.Super. 166, 601 A.2d 292 (1992), *appeal denied,* 530 Pa. 651, 608 A.2d 27, *cert. denied,* 506 U.S. 869, 113 S.Ct. 199, 121 L.Ed.2d 141 (1992), compels the opposite conclusion. We disagree. In *Collincini,* an employee (Collincini) sued his former employer, Honeywell, Inc. ("Honeywell"), for intentional interference with contractual relations. Collincini alleged that his termination by his current employer, American Technical Services, Inc. ("ATS"), resulted from letters sent by Honeywell to ATS claiming that Collincini was wrongfully using proprietary information and engaging in unfair competition with Honeywell's customers, and threatening to sue ATS if it did not end

---

**7.** *See, e.g., Francis v. Dun & Bradstreet, Inc.,* 3 Cal.App.4th 535, 540 n. 4, 4 Cal.Rptr.2d 361 (Cal.Ct.App.1992) (California law); *Library Bureau, Inc. v. Carter,* 1986 WL 9936 at *3 (Del.Super.Aug.15, 1986) (Delaware law); *Int'l City Mgmt. Assoc. Retirement Corp. v. Watkins,* 726 F.Supp. 1, 6–7 (D.D.C.1989) (District of Columbia law); *Worldwide Primates, Inc. v. McGreal,* 26 F.3d 1089, 1092 (11th Cir.1994) (Florida law); *Green Const. Co. v. Black & Veach Engineers & Architects,* 1990 WL 58780 at *5 (D.Kan. Apr. 19, 1990) (Kansas Law); *Kutcher v. Zimmerman,* 87 Hawai'i 394, 957 P.2d 1076, 1090–91 (App.1998) (Hawaii law); *Soderlund Bros., Inc. v. Carrier Corp.,* 278 Ill.App.3d 606, 620, 215 Ill.Dec. 251, 663 N.E.2d 1, 10 (1995), *appeal denied,* 168 Ill.2d 626, 671 N.E.2d 743, 219 Ill.Dec. 576 (1996) (Illinois law); *Glass Service Co., Inc. v. State Farm Mut. Auto. Ins. Co.,* 530 N.W.2d 867, 871 (Minn.App.1995) (Minnesota law); *Macke Laundry Serv. Ltd. Partnership v. Jetz Service Co.,* 931 S.W.2d 166, 181 (Mo. App.Ct.1996) (Missouri law); *Montrone v. Maxfield,* 122 N.H. 724, 449 A.2d 1216, 1217–18 (1982) (New Hampshire law); *East Penn Sanitation, Inc. v. Grinnell Haulers, Inc.,* 294 N.J.Super. 158, 682 A.2d 1207, 1218 (App. Div.1996), *certification denied,* 148 N.J. 458,

690 A.2d 606 (1997) (New Jersey law); *Dryden v. Cincinnati Bell Tel. Co.,* 135 Ohio App.3d 394, 401, 734 N.E.2d 409, 414 (Ohio App. 1 Dist., 1999) (Ohio law); *McNickle v. Phillips Petroleum Co.,* 23 P.3d 949, 953–54 (Okla.Ct.Civ.App.1999) (Oklahoma law); *David L. Aldridge Co. v. Microsoft Corp.,* 995 F.Supp. 728, 742 (S.D.Tex.1998) (Texas law); *Grover v. Rousso,* 136 Wash.App. 1013, 1019 n. 12 (2006), *review denied,* 161 Wash.2d 1024, 169 P.3d 830 (2007) (Washington law); *Tiernan v. Charleston Area Med. Ctr., Inc.,* 203 W.Va. 135, 149, 506 S.E.2d 578, 592–93 (1998) (West Virginia law); *Joseph P. Caulfield & Assoc., Inc. v. Litho Prods., Inc.,* 155 F.3d 883, 891 (7th Cir.1998) (Wisconsin law); *Allen v. Safeway Stores Inc.,* 699 P.2d 277, 280 (Wyo.1985) (Wyoming law).

It would appear that the only state to reject section 772(a) is Utah, but in so doing the Supreme Court of that state explained that it does not follow the Restatement (Second) in connection with the tort of intentional interference with contractual relationships. *Pratt v. Prodata, Inc.,* 885 P.2d 786, 790 (Utah 1994) ("[T]his court has rejected the various Restatement formulations of the tort of intentional interference with economic relations.").

Collincini's practices immediately. A jury found in Collincini's favor on his intentional interference with contract claim and awarded him compensatory and punitive damages.

¶ 17 On appeal, Honeywell contended that its conduct could not be tortious because, *inter alia*, its statements to ATS were true. This Court ruled in favor of Collincini, noting that while "[t]ruth is an absolute defense to defamation; it is *not* a defense to intentional interference with contractual relations." *Id.* at 296 (emphasis in original). In reviewing the record on appeal, however, this Court concluded that the evidence of record provided a sound basis for the jury's conclusion that the information conveyed by Honeywell to ATS was *false:* "Evidence admitted at trial indicated that Honeywell knew at the time the first letter was written that it had no cause of action against Collincini or ATS." *Id.* at 295–96. We further concluded that "while Honeywell's list of contract renewals lost to ATS might be factually correct, its characterization of the information Collincini relied on to obtain those contracts as proprietary or trade secrets is false as a matter of law." *Id.* at 296. Collincini's knowledge of customers' contract renewal dates constituted only "general knowledge, skill and experience" in the field for the type of service provided by Honeywell and ATS, and thus were not as a matter of law protectable proprietary information. *Id.* at 296 n. 4.

¶ 18 We decline to follow *Collincini* in the present appeal for two reasons. First, our statement in *Collincini* that truth is "not a defense to intentional interference with contractual relations" was *obiter dictum*,[8] since in deciding the case we relied

primarily on the fact that there was sufficient evidence of record to permit the jury to conclude that Honeywell's statements to ATS were *false,* both as a matter of fact and as a matter of law. Second, we did not cite to any authority in support of the statement, and we neither acknowledged nor discussed the potential applicability of Restatement (Second) section 772(a) or our prior decisions in this area (*Yaindl* and *Geyer*). We decline Walnut Street's suggestion that in *Collincini* we rejected the adoption of section 772(a) *sub silentio*.

¶ 19 For these reasons, we adopt Restatement (Second) section 772(a). As such, Macrone's truthful statements to Procacci were not improper as a matter of law and thus could not form the basis for a tortious interference with contract claim. BCI was entitled to JNOV as a matter of law, and we therefore we reverse the trial court's order and remand for entry of JNOV in favor of BCI.

¶ 20 Order reversed. Case remanded with instructions.

---

**8.** Black's Law Dictionary defines obiter dictum as a "judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision and therefore not precedential (although it may be considered persuasive)." *Black's Law Dictionary* 1102 (8th ed. 2004).