J-A09023-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| SABIA LANDSCAPE, INC. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JAMES LONG, INDIVIDUALLY AND | : | |
| D/B/A JIMMY'S TREE SERVICE AND | : | |
| D/B/A JIMMY'S TREE AND | : | No. 852 EDA 2018 |
| LANDSCAPE CONTRACTORS | : | |
| | : | |
| Appellant | : | |

Appeal from the Judgment Entered April 11, 2018
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  3040 January Term, 2016

BEFORE:   KUNSELMAN, J., MURRAY, J., and PELLEGRINI*, J.

MEMORANDUM BY MURRAY, J.:                    **FILED APRIL 29, 2019**

James Long (Long), individually and d/b/a Jimmy's Tree Service and Jimmy's Tree and Landscape Contractors (collectively, Appellant), appeals from the judgment entered in favor of Appellee Sabia Landscape, Inc. (Sabia). Upon review, we affirm.

Sabia and Appellant are both in the landscaping and snow removal business.  This case arises from the parties' multiple disputes over unpaid sums of money Sabia alleged Appellant owed to Sabia.  On January 26, 2016, Sabia filed a complaint against Appellant in which it raised claims of breach of contract, unjust enrichment, and quantum meruit.  Specifically, Sabia alleged that it had not received $59,427.50 from Appellant for the following:

- $25,000.00 on an oral contract for a personal loan to Appellant;

_____
* Retired Senior Judge assigned to the Superior Court.

- $9,000.00 on an oral contract for a loan so that Appellant could pay his backhoe repair bill;

- $6,750.00 as a finder's fee for the 2013-2014 oral contract for removing snow from the Roosevelt Mall;

- $5,000.00 as a finder's fee for the 2014-2015 oral contract for removing snow from the Roosevelt Mall; and

- $5,000.00 as a finder's fee for the 2015-2016 oral contract for removing snow from the Roosevelt Mall.

- $8,677.50 for snow removal services completed by Sabia for Appellant at a Raymour & Flanigan shopping center.

On February 22, 2017, this case proceeded to a hearing before an arbitration panel, which ruled in favor of Appellant. On March 17, 2017, Sabia appealed the arbitration decision to the court of common pleas. On October 10 and 11, 2017, the trial court convened a bench trial; on January 8, 2018, the trial court entered "judgment" in favor of Sabia in the amount of $60,718.35. The trial court concluded that valid oral contracts existed between the parties for the disputed amounts, and that Appellant had not fully resolved these debts with Sabia. In reaching the award of $60,718.35, the trial court subtracted $20,000.00 from Sabia's original damages claim of $59,427.50 because Sabia admitted at trial that it had received $20,000.00 from Appellant in a mix of various cash and check payments. Thus, the trial court awarded Sabia $39,427.50 plus three years of interest (per the terms of the contracts), for a total award of $60,718.35.

On January 17, 2018, Appellant filed timely post-trial motions, which the trial court denied on February 9, 2018. On February 27, 2018, Appellant

filed a notice of appeal from the order denying its post-trial motions. Both Appellant and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

On April 10, 2018, this Court issued an order directing Appellant to praecipe the trial court to enter judgment, as the trial court's entry of "judgment" on January 8, 2018, prior to the filing of post-trial motions, was premature and consequently, null and void. Generally, an appeal will not lie from a trial court's denial of post-trial motions when the underlying verdict has not been reduced to judgment. **See Shonberger v. Oswell**, 530 A.2d 112, 113 n.1 (Pa. Super. 1987) (where a trial court enters judgment prior to disposition of timely filed post-trial motions, the judgment is premature and void.). On April 11, 2018, the trial court entered judgment.

On appeal, Appellant presents the following issues for review:

1.     "Interpreting the terms of a contract is a question of law, thus implicating a ***de novo*** standard of review and a ***plenary*** scope of review." **Commonwealth v. UPMC**, 188 A.3d 1122, 1132 (Pa. 2018). This *de novo* standard of review and plenary scope of review also applies to claims for quantum meruit and unjust enrichment. **See Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C.**, 179 A.3d 1093, 1098 (Pa. 2016).

The "***de novo*** standard of review permits the court to determine the case anew, including matters pertaining to testimony and other evidence." **Bowling v. Office of Open Records**, 753 A.3d, n.15 (Pa. 2013). The ***plenary*** scope of review allows this Court to "***review the entire record in making its decision***" **Kripp v. Kripp**, 849 A.2d 1159, n.5 (Pa. 2004); and it "***need not defer to the conclusions of the trial court and [is] free to draw [its] own inferences***." **Abbott v. Schnader**, [] 805 A.2d 547, 553 [(Pa. Super. 2002).]

Did the [t]rial [c]ourt err in arguing that its findings on contract interpretation, quantum meruit, and unjust enrichment were entitled to an "abuse of discretion" standard of review and not subject to plenary review?

2.     [Sabia] asserted 6 separate claims (plus interest) against [Appellant].  At trial, however, [Sabia] admitted under cross-examination that it had in fact been paid for 3 of the 6 claims, which themselves totaled $20,800.  [Sabia] was thus judicially estopped from continuing to seek repayment of these 3 claims totaling $20,800.  The [t]rial [c]ourt however awarded [Sabia] the full $20,800 on these 3 claims that Appellee admitted prior payment.

Therefore, was the [t]rial [c]ourt's award of $20,800 on the 3 claims where [Sabia] had admitted, in court and under oath, that it had already been paid years earlier a clear error of law and/or abuse of discretion?

3.     The parties executed 3 separate written contracts for each of the 3 snow-seasons they partnered together on for the Roosevelt Mall (Year 1 – 2012-2013; Year 2 – 2013-2014; and Year 3 – 2014-2015).  Therefore, the parties' written contracts control as to all terms and obligations identified in and arising from their respective contracts.

Therefore, did the [t]rial [c]ourt error in disregarding the parties' 3 separate written contracts, and instead "finding" an oral contract whose terms were diametrically opposed to the parties' written contracts and intentions?

4.     Under Pennsylvania law, an oral contract will not be recognized without evidence of a prior "extensive course of dealing" or "longstanding business relationship" between the parties.

Here, the parties had no prior business relationship before the 2012-2015 time at issue except for one snow plow job at one shopping center 16 years prior during the "Blizzard of 1996."

Therefore did the Trial Court commit clear error of law and/or abuse of discretion in finding "an extensive course of dealing between the parties" to support an oral multi-year contract as to all disputed terms in 2012-2015?

5.     During the parties' Year 2 Contract (2013-2014), [Sabia] accepted [Appellant]'s offer to "flip" (*i.e.*, assign) a $6,000 "Flat Fee" season snow-removal contract for a Raymour & Flan[i]gan furniture location one mile from [Sabia's] home. Under the terms of a "Flat-Fee" snow removal contract, the snowplow contractor agrees to provide all snow plow services for the negotiated "Flat Fee," as opposed to an hourly "time and materials" contract.

Prior to initiating suit, [Sabia] never denied the Raymour & Flan[i]gan contract it accepted was a "Flat Fee" contract. [Sabia] also admitted that it had no contemporaneous letters, emails, texts, memos, delinquent payment notices, or other documents memorializing its belief that it was an "hourly/time and materials" contract and not a "Flat Fee" agreement.

In addition, [Sabia] admitted that it never made any pre-suit claim to [Appellant] for additional "hourly/time and materials" when the parties were "settling up" and finalizing their negotiations for their **_10/17/2014_** Year 3 Contract.

Thus, did the [t]rial [c]ourt err in finding an "oral contract" that required [Appellant] to pay [Sabia] on an "hourly/time and material basis" for the Raymour & Flan[i]gan "Flat Fee" contract?

6.     [Appellant] received an $18,000 loan from [Sabia] which required repayment in 9 equal monthly installments (Feb.-Oct. 2014) of $2,500 each ($2,000 in repayment of principal and $500 for interest). [Appellant] made all the required payments with the final payment made on October 5, 2014. [Sabia] now claims the loan was for $25,000 and remains unpaid.

[Sabia] however never raised this claim during the parties' heated negotiations leading up to execution of their 3rd and final . . . contract signed on October 17, 2014 (12 days *after* [Appellant] made its 9th and final payment on the loan). In fact, [Sabia] never raised this claim for over 15 months after the parties' final contract of 10/17/2014, raising it for the first time in its January 26, 2016 Complaint here.

Having failed to raise this claim during the heated negotiations leading to the parties' final contract of 10/17/14, [Sabia]'s claim is barred by the doctrines of Accord & Satisfaction, Full and Final Payment, Full Performance and/or Substantial Performance,

Release, and Failure of Consideration. Therefore, did the [t]rial [c]ourt's award of $25,000 and interest on the purportedly unpaid loan constitute a clear error of law and abuse of discretion requiring JNOV and/or a New Trial on all issues.

7. [Appellant] entered into three written contracts with [Sabia] for each of the 3 snow seasons in question at the Roosevelt Mall: 2012 – 2013; 2013 – 2014; and 2014 – 2015. None of the parties' written agreements provided for a "Finder's Fee" in perpetuity for the Roosevelt Mall contract, or included a "Non-Compete" provision that disallowed [Appellant] from competing on the contract in the future. Thus, did the [t]rial [c]ourt err in finding that [Appellant] was bound by an "oral contract" to pay a "Finder's Fee" in perpetuity on the Roosevelt Mall contract, including a $5,000 Finder's Fee for the 2015 – 2016 snow season?

Appellant's Brief at 6-10 (emphasis in original).

The trial court correctly observed that Appellant "has essentially overcomplicated what is a very straightforward analysis." Trial Court Opinion, 7/31/18, at 13. We further note that our rules of appellate procedure caution against Appellant's chosen strategy for its statement of the questions involved. *See* Pa.R.A.P. 2116(a) (note) ("Although the page limit on the statement of questions involved was eliminated in 2013, verbosity continues to be discouraged. The appellate courts strongly disfavor a statement that is not concise.").

To begin, we recognize our standard of review:

Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as the verdict of a jury, and the findings will not be disturbed on appeal unless predicated upon errors of law or unsupported by competent evidence in the record. Furthermore,

our standard of review demands that we consider the evidence in a light most favorable to the verdict winner.

*Levitt v. Patrick*, 976 A.2d 581, 588-89 (Pa. Super. 2009). "[W]e will reverse a trial court's denial of a motion for JNOV or a new trial only if we find an abuse of discretion or an error of law that controlled the outcome of the case." *Walnut St. Assocs., Inc. v. Brokerage Concepts, Inc.*, 982 A.2d 94, 97 (Pa. Super. 2009). Additionally, we recognize that with respect to claims involving contract interpretation:

> Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation. Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as the appellate court may review the entire record in making its decision. However, we are bound by the trial court's credibility determinations.

*Gillard v. Martin*, 13 A.3d 482, 487 (Pa. Super. 2010).

Appellant first argues that we must apply a *de novo* standard of review to issues relating to contract interpretation. As stated above, this is the established standard of review in such matters. *See id.* Consequently, this issue does not warrant further discussion.

Second, Appellant argues that the trial court erred in awarding Sabia approximately $20,000.00 which Sabia admitted to receiving. As the trial court plainly indicated, Sabia admitted to having received from Appellant $20,000.00 in various payments for debts owed. *See* Trial Court Opinion, 7/31/18, at 8; *see also* N.T., 10/10/17, at 40-41, 124-27. Thus, Sabia reduced its damages request by $20,000.00 from $59,427.50 to $39,427.50,

which is exactly what the trial court awarded to Sabia, plus interest. To the extent Appellant now argues that the trial court did not account for this $20,000.00, the assertion is perplexing and completely belied by the record. Accordingly, Appellant's second issue is meritless. ***See Walnut St. Assocs.***, 982 A.2d at 97.

In its third issue, Appellant argues that the trial court erred in disregarding the parties' three separate written contracts for the three snow seasons they partnered together for snow removal at the Roosevelt Mall. Appellant maintains the trial court improperly relied on alleged oral contracts that conflicted with the terms of written contracts. In its related claim, presented in its fourth issue, Appellant argues that the trial court erred in finding an extensive course of dealing between the parties to support an oral, multi-year contract as to all disputed terms relating to the Roosevelt Mall contracts.

Appellant has waived its third and fourth issues. Appellant did not raise its third and fourth issues in its Pennsylvania Rule of Appellate Procedure 1925(b) statement. ***See*** Statement of Matters Complained of on Appeal, 3/23/18. It is well-settled that "[i]ssues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived." Pa.R.A.P. 1925(b)(4)(vii). This Court recently summarized the prevailing law:

> Pa.R.A.P. 1925(b) provides that a judge entering an order giving rise to a notice of appeal "may enter an order directing the

appellant to file of record in the trial court and serve on the judge a concise statement of the errors complained of on appeal ('Statement')." Rule 1925 also states that "[i]ssues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived." Pa.R.A.P. 1925(b)(4)(vii). In **Commonwealth v. Lord**, [] 719 A.2d 306 ([Pa.] 1998), our Supreme Court held that "from this date forward, in order to preserve their claims for appellate review, [a]ppellants must comply whenever the trial court orders them to file a Statement of Matters Complained of on Appeal pursuant to Rule 1925. Any issues not raised in a 1925(b) statement will be deemed waived." **Lord**, 719 A.2d at 309; **see also Commonwealth v. Castillo**, [] 888 A.2d 775, 780 ([Pa.] 2005) (stating any issues not raised in a Rule 1925(b) statement are deemed waived). This Court has held that "[o]ur Supreme Court intended the holding in **Lord** to operate as a bright-line rule, such that 'failure to comply with the minimal requirements of Pa.R.A.P. 1925(b) will result in **automatic waiver** of the issues raised.'" **Greater Erie Indus. Dev. Corp. v. Presque Isle Downs, Inc.**, 88 A.3d 222, 224 (Pa. Super. 2014) (*en banc*) (emphasis in original) (quoting **Commonwealth v. Schofield**, [] 888 A.2d 771, 774 ([Pa.] 2005).

"[I]n determining whether an appellant has waived issues on appeal based on non-compliance with Pa.R.A.P. 1925, it is the trial court's order that triggers an appellant's obligation ... therefore, we look first to the language of that order." **In re Estate of Boyle**, 77 A.3d 674, 676 (Pa. Super. 2013).

**U.S. Bank, N.A. for Certificateholders of LXS 2007-7N Tr. Fund v. Hua**, 193 A.3d 994, 996–97 (Pa. Super. 2018).

Here, the trial court ordered Appellant to file a Rule 1925(b) statement on March 12, 2018 and Appellant did so on March 23, 2018. Appellant, however, did not include its third and fourth issues in its Rule 1925(b) statement, and consequently, the trial court did not address the issues in its Rule 1925(a) opinion. Accordingly, Appellant has failed to preserve its third and fourth issues for our review.

- 9 -

In its fifth issue, Appellant argues that the trial court erred in concluding that the parties had a contract for Sabia to perform snow removal at a Raymour & Flanigan shopping center on behalf of Appellant, at an hourly rate. Appellant maintains that the parties had agreed for Sabia to perform the work for Appellant for a flat fee of $6,000.00.

"It is well settled that in the case of a disputed oral contract, what was said and done by the parties as well as what was intended by what was said and done by them are questions of fact for the [fact finder]." *United Envtl. Grp., Inc. v. GKK McKnight, LP*, 176 A.3d 946, 963 (Pa. Super. 2017) (quoting *Solomon v. Luria*, 246 A.2d 435, 438 (Pa. Super. 1968)).  This Court has explained:

> [T]he question of whether an undisputed set of facts establishes a contract is a matter of law.  It is also well settled that in order for an enforceable agreement to exist, there must be a "meeting of the minds," whereby both parties mutually assent to the same thing, as evidenced by an offer and its acceptance.  It is equally well established that an offer may be accepted by conduct and what the parties do pursuant to the offer is germane to show whether the offer is accepted.  In cases involving contracts wholly or partially composed of oral communications, the precise content of which are not of record, courts must look to the surrounding circumstances and course of dealing between the parties in order to ascertain their intent.  We must, therefore, look to the parties' course of conduct to ascertain the presence of a contract.

*Id.* (quoting *Prieto Corp. v. Gambone Const. Co.*, 100 A.3d 602, 609 (Pa. Super. 2014)).

The trial court summarized the parties' arguments relating to the Raymour & Flanigan snow removal as follows:

- 10 -

[Sabia] alleged that [it] negotiated an oral contract with [Appellant] involving snow removal services at the Raymour and Flanigan shopping center. [Long, Appellant's owner,] testified that he received the Raymour and Flanigan contract as a seasonal contract (flat fee) for $6,000 and that he offered it to [Sabia]. N.T., 10/10/17, at] 40. [Appellant] claimed that [Sabia] agreed to cover the contract for $6,000, but [Sabia's owner] testified that he agreed to cover the contract at a reduced hourly rate. N.T.[, 10/11/17, at] 41; N.T.[, 10/10/17, at] 63. [Sabia]'s calculation of the hourly rate for the Raymour and Flanigan contract [resulted in a] total balance owed by [Appellant] of $8,677.50. [Sabia] claims that [Appellant] never paid [it] for this work.

Trial Court Opinion, 7/31/18, at 7.

In rejecting Appellant's claim that there was a flat fee agreement for snow removal at the Raymour & Flanigan shopping center, the trial court explained:

[Sabia's owner] testified that [Long] asked him to help plow Raymour and Flanigan's parking lot, which also contains a Trader Joe's and a liquor store. N.T.[, 10/10/17, at] 34-48, 43. [Sabia] agreed to do it by the hour for [Appellant] at a reduced rate. [*Id.* at] 63-64. [Long] asked [Sabia] to do it because he did not have the time to do it himself. N.T.[, 10/10/17, at] 163. [Sabia] produced invoices from the work that [it had] mailed to [Appellant]'s address. N.T.[, 10/10/17, at] 48-49. [Long] testified that he was paid all of the money from this job, under his contract with the contractor for that property. [] N.T.[,10/11/17, at] 46.

Thus, based on this testimony, this Court found that [Sabia] performed the work for [Appellant]. It's reasonable that [Sabia] would seek compensation for this work. [Appellant's owner] testified that he kept the money from the job himself. It is highly unlikely that [Sabia] would have offered to do this work for free, which is supported by the existence of [Sabia]'s invoices. [Sabia] provided sufficient evidence to show the existence of an oral contract here.

*Id.* at 16-17.

Upon review, we find that the trial court did not err in concluding that Sabia and Appellant had an oral contract for Sabia to remove snow from the Raymour & Flanigan shopping center at an hourly rate, as opposed to a flat fee. **See GKK McKnight**, 176 A.3d at 963. Appellant's claim amounts to nothing more than a challenge to the trial court's credibility determination relating to the evidence presented by the parties about whether the Raymour & Flanigan oral contract provided for an hourly rate or flat fee. Pertinently, Appellant has not cited any testimony or other evidence indicating that the Raymour & Flanigan contract was a flat flee agreement. The trial court, sitting as the factfinder, resolved questions of credibility in favor of Sabia, who presented evidence reflecting that the contract contemplated that compensation would be paid at an hourly rate; we are bound by this determination. **See id.** Accordingly, Appellant's fifth issue lacks merit.

In its sixth issue, Appellant argues that the trial court erred in concluding that Sabia loaned Appellant $25,000.00, and that Appellant has never satisfied this debt. Appellant asserts that Sabia only loaned it $18,000, and Appellant had repaid the loan.

In rejecting this claim, the trial court explained:

At trial, [Appellant] did not dispute the fact that [it] asked [Sabia] for a loan. [Sabia] lent the money, in cash. However, there was a dispute about the amount of money [Sabia] loaned to [Appellant]. [Long] testified that he requested the loan from [Sabia], but that he only borrowed $18,000. N.T.[, 10/11/17, at] 28. [Sabia] alleged that [Appellant] borrowed $25,000 with interest. N.T., 10/10/17, at 24-26. This court found that [the testimony of Sabia's owner] about the amount of the loan was

- 12 -

credible and that [Long's testimony] was not credible. Both parties discussed terms of repayment. [Appellant] promised to pay the loan back at 2% interest per month or 24% per year. [*Id.* at] 25-26. [Sabia] supported [its claim] about the loan amount with testimony from [its] company controller Sal Barilia. Mr. Barilia confirmed that he was notified about the $25,000 loan and kept track of the payments made by [Appellant]. [*Id.* at 161-63]. Mr. Barilia stated that it wasn't uncommon for [Sabia's owner] to lend money from his business to others. *Id.* [Appellant]'s company controller Jennifer Long couldn't provide any insight into the loan amount from his perspective. She admitted that she wouldn't have known whether the loan was for $25,000 or $18,000. N.T.[, 10/11/17, at] 159-60.

Thus, based on the evidence, this [c]ourt found that [Sabia] presented sufficient evidence to show that [it] lent [Appellant] $25,000 and that Appellant has not paid it back.

Trial Court Opinion, 7/31/18, at 15.

Upon review, we find no basis to disturb the trial court's determination that Sabia loaned Appellant $25,000.00 and Appellant did not satisfy this debt. The testimony of Mr. Sabia revealed that he loaned Appellant $25,000.00. N.T., 10/10/17, at 24-26. Mr. Barilia's testimony corroborated the loan amount of $25,000 and confirmed that Sabia had not received money in satisfaction of the debt. *Id.* at 161-63. Once again, Appellant's claim is nothing more than a challenge to the credibility determination made by the trial court regarding the loan amount and whether Appellant satisfied the debt. Appellant asks this Court to reweigh the evidence in its favor. However, the trial court, sitting as factfinder, resolved these questions of credibility in favor of Sabia, who presented evidence of an oral contract for a $25,000.00 loan, and of Appellant's failure to repay that loan. We are bound by the trial court's

findings.  *See GKK McKnight*, 176 A.3d at 963.  Accordingly, Appellant's sixth issue is meritless.

Finally, Appellant argues that the trial court erred in concluding that the parties' contract relating to snow removal at the Roosevelt Mall included a "Finder's Fee in perpetuity" and a "Non-Compete provision that disallowed [Appellant] from competing on the contract in the future."  Appellant's Brief at 61-62.  Appellant has waived this issue.

"The argument portion of a brief must include pertinent discussion of the point raised as well as citations to relevant authority."  *Iron Age Corp. v. Dvorak*, 880 A.2d 657, 665 (Pa. Super. 2005); Pa.R.A.P. 2119(a)-(b).  The "[f]ailure to develop an argument results in waiver of the claim."  *Plastipak Packaging, Inc. v. DePasquale*, 937 A.2d 1106, 1112 (Pa. Super. 2007).  "This Court will not develop arguments on the behalf of an appellant or comb the record for factual underpinnings to support an appellant's position."  *Keller v. Mey*, 67 A.3d 1, 7 (Pa. Super. 2013).

In its discussion of the final issue, which is comprised of a mere 12 lines of text, Appellant cites no authority and only vaguely describes a cognizable issue for our review.  Appellant's argument is severely underdeveloped, tersely worded, and in no way explains how the trial court erred with respect to the issue Appellant has attempted to raise.  In sum, Appellant provides no basis upon which this Court could grant relief.  Given these deficiencies, we find waiver.  *See J.J. DeLuca Co., Inc. v. Toll Naval Associates*, 56 A.3d

402, 411 (Pa. Super. 2012) (holding that issue on appeal is waived where appellant fails to develop argument of trial court error).

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/29/19